In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3162

PAULA CASILLAS,

*Plaintiff-Appellant*,

*v.*

MADISON AVENUE ASSOCIATES, INC.,
an Indiana corporation,

*Defendant-Appellee*.

---

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-01774 — **William T. Lawrence**, *Judge*.

---

ARGUED APRIL 20, 2018 — DECIDED JUNE 4, 2019

---

Before SYKES and BARRETT, *Circuit Judges*, and DURKIN,
*District Judge*.[*]

BARRETT, *Circuit Judge*. The bottom line of our opinion can
be succinctly stated: no harm, no foul. Madison Avenue Asso-
ciates, Inc. made a mistake. The Fair Debt Collection Practices
Act requires debt collectors to notify consumers about the

---

[*] Of the Northern District of Illinois, sitting by designation.

process that the statute provides for verifying a debt. Madison sent Paula Casillas a debt-collection letter that described the process, but it neglected to specify that she had to communicate in writing to trigger the statutory protections. Casillas noticed the omission and filed a class action against Madison.

The only harm that Casillas claimed to have suffered, however, was the receipt of an incomplete letter—and that is insufficient to establish federal jurisdiction. As the Supreme Court emphasized in *Spokeo, Inc. v. Robins*, Casillas cannot claim "a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." 136 S. Ct. 1540, 1549 (2016). Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions. Because Madison's violation of the statute did not harm Casillas, there is no injury for a federal court to redress.

## I.

Paula Casillas allegedly owed a debt to Harvester Financial Credit Union. Presumably acting as an agent of the credit union, Madison Avenue Associates, Inc. sent Casillas a letter demanding payment. The Fair Debt Collection Practices Act requires a debt collector to give a written notice to a consumer within five days of its initial communication. 15 U.S.C. § 1692g(a). That notice must include, among other things, a description of two mechanisms that the debtor can use to verify her debt. First, a consumer can notify the debt collector "in writing" that she disputes all or part of the debt, which obligates the debt collector to obtain verification of the debt and mail a copy to the debtor. *Id.* § 1692g(a)(4). A failure to dispute

the debt within 30 days means that the debt collector will assume that the debt is valid. *Id.* § 1692g(a)(3). Second, a consumer can make a "written request" that the debt collector provide her with the name and address of the original creditor, which the debt collector must do if a different creditor currently holds the debt. *Id.* § 1692g(a)(5). Madison's notice conveyed all of that information, except that it neglected to specify that Casillas's notification or request under those provisions must be *in writing*.

Casillas filed a class action against Madison because of that omission. She did not allege that she tried—or even planned to try—to dispute the debt or verify that Harvester Financial Credit Union was actually her creditor. But the Act renders a debt collector liable for "fail[ing] to comply with any provision of [the Act]," *id.* § 1692k(a), and by neglecting to notify Casillas of the writing requirement, Madison failed to comply with a provision of the Act. That, Casillas alleged, "constitute[d] a material/concrete breach of her rights under the [Act]." She sought to recover a $1000 statutory penalty for herself and a $5000 statutory penalty for the unnamed class members, along with attorneys' fees and costs. *Id.* § 1692k(a)(2)(A)–(B). The parties eventually entered a joint motion for class certification and preliminary approval of a class settlement.[1]

---

[1] A debt collector's liability to unnamed class members is "such amount as the court may allow … not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." § 1692k(a)(2)(B). The $5000 Casillas sought for the unnamed members of the class represents 1% of Madison's net worth. The attorneys' fees were the big-ticket item and the reason why Madison quickly agreed to settle the case.

While that motion was pending, we decided *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884 (7th Cir. 2017). There, following the Supreme Court's decision in *Spokeo*, we held that a plaintiff cannot satisfy the injury-in-fact element of standing simply by alleging that the defendant violated a disclosure provision of a consumer-protection statute. *Id.* at 887. The district court held that *Groshek* required it to dismiss Casillas's complaint. Casillas had not alleged that Madison's omission affected her in any way. And absent an allegation that Madison's violation had caused her harm or put her at an appreciable risk of harm, the district court said, Casillas lacked standing to sue.

## II.

The elements of standing are well settled: the plaintiff must allege an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). These requirements are rooted in Article III, which limits a federal court's authority to the resolution of "Cases" or "Controversies." U.S. CONST. art. III, § 2. If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.

Casillas's appeal involves the injury-in-fact requirement, which the Supreme Court has described as the "[f]irst and foremost" element of standing. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation marks omitted). An alleged harm need not be tangible to

be "concrete," but it must be "'real,' and not 'abstract.'" *Spokeo*, 136 S. Ct. at 1548. The question here is whether Casillas has alleged that she suffered—or faced a real risk of suffering—a concrete harm.[2]

## A.

We begin by emphasizing a basic point: the fact that Congress has authorized a plaintiff to sue a debt collector who "fails to comply with any requirement [of the Fair Debt Collection Practices Act]," 15 U.S.C. § 1692k(a), does not mean that Casillas has standing. *See Spokeo*, 136 S. Ct. at 1549 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."). Congress has the power to define intangible harms as legal injuries for which a plaintiff can seek relief, *see Lujan*, 504 U.S. at 578, and it has sought to exercise that power by enabling debtors to hold debt collectors liable for statutory violations. But Congress must operate within the confines of Article III, which "requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. Thus, Casillas cannot demonstrate standing simply by pointing to Madison's procedural violation. She must show that the violation harmed or "presented an 'appreciable risk

---

[2] Madison has disclaimed any position on this issue. Casillas has interpreted the settlement agreement to require Madison to support her standing argument. To avoid being accused of breaching the agreement, Madison has declined to argue that Casillas lacks standing; its brief offers a neutral assessment of the case law.

of harm' to the underlying concrete interest that Congress sought to protect." *Groshek*, 865 F.3d at 887 (citation omitted).

The Fair Debt Collection Practices Act seeks to protect debtors from "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Section 1692g serves this end by giving debtors a way to dispute or verify their supposed debts. And by obligating creditors to tell debtors how to do that, subsections (a)(4) and (5) reduce the risk that debtors will inadvertently lose the protections given to those who observe the statutory requirements.

Casillas did not allege that Madison's actions harmed or posed any real risk of harm to her interests under the Act. She did not allege that she tried to dispute or verify her debt orally and therefore lost or risked losing the statutory protections. Indeed, she did not allege that she ever even considered contacting Madison or that she had any doubt about whether she owed Harvester Financial Credit Union the stated amount of money. She complained only that her notice was missing some information that she did not suggest that she would ever have used. Any risk of harm was entirely counterfactual: she was not at any risk of losing her statutory rights because there was no prospect that she would have tried to exercise them. Because Madison's mistake didn't put Casillas in harm's way, it was nothing more than a "bare procedural violation." *Spokeo*, 136 S. Ct. at 1549. Casillas had no more use for the notice than she would have had for directions accompanying a product that she had no plans to assemble.

Casillas insists that she suffered the same kind of harm that we held sufficient to confer standing in *Robertson v. Allied*

*Solutions*, 902 F.3d 690 (7th Cir. 2018). There, a prospective employer violated the Fair Credit Reporting Act's requirement that it provide the plaintiff with a copy of her background check before it revoked her offer of employment. *Id.* at 693. We held that the plaintiff satisfied the injury-in-fact requirement even though she had not alleged that the report was inaccurate or that she could have persuaded the defendant to hire her if she had received it. *Id.* at 697. Casillas says that she suffered an injury in fact even though she did not allege that she would have disputed or verified the debt if the notice had been complete.

But the plaintiff in *Robertson* alleged that the defendant had not only violated the statute but also harmed the concrete interest that the statute protected. The Fair Credit Reporting Act required the prospective employer to give the applicant a copy of the background report before it took an adverse action so that she would have an opportunity to review and respond to the information in the report. If there were inaccuracies, she could identify them; if the negative information was accurate, she could try to put the bad facts in a better light. *Id.* at 696–97. The plaintiff alleged that the employer took that opportunity from her: "[b]y withholding her background report … [the employer] limited her ability to review the basis of the adverse employment decision and impeded her opportunity to respond." *Id.* at 695.

In holding that this allegation satisfied the injury-in-fact requirement, we emphasized that "Article III's strictures are met not only when a plaintiff complains of being deprived of some benefit, but also when a plaintiff complains that she was deprived of a chance to obtain a benefit." *Id.* at 697. The plaintiff in *Robertson* made just that complaint. She did not have to

allege that she could have retained the job offer if she had access to the background report. Her lost opportunity to try to change the defendant's opinion of her was a sufficiently concrete injury to confer standing.

Casillas did not allege any comparable lost opportunity. Nor could she. Unlike the Fair Credit Reporting Act, the provisions of the Fair Debt Collection Practices Act that Madison violated do not protect a consumer's interest in having an opportunity to review and respond to *substantive* information. *See id.* ("An informational injury can be concrete when the plaintiff is entitled to receive and review *substantive* information." (emphasis added)). They instead protect a consumer's interest in knowing her statutory rights. And in *Robertson*, we expressly distinguished a defendant's obligation to provide substantive information from its obligation to give notice of statutory rights. There, the prospective employer had not only failed to provide the plaintiff with the background report; it had also failed to provide her with a written summary of her rights under the Fair Credit Reporting Act. *See id.* at 693. We didn't need to resolve whether the plaintiff would have had standing if the latter were her only complaint—so we didn't. But we observed that "[t]he problem with that argument is that it describes only a procedural injury. [The plaintiff] did not indicate how, if the procedures had properly been followed, she might have persuaded [the employer] to hire her. With or without written notice of her rights, [she] would not have become an [] employee." *Id.* at 694–95. So too here: receiving a complete notice would not have changed anything for Casillas.

Casillas's case is not like *Robertson.* Instead, as the district court recognized, it is like those in which we have held that

procedural injuries under consumer-protection statutes are insufficiently concrete to confer standing. In *Groshek*, for example, the plaintiff sued a prospective employer for violating the Fair Credit Reporting Act. 865 F.3d at 886. The defendant had complied with the Act by disclosing that it would obtain a credit report on the applicant. But it violated the Act's "stand-alone" requirement: the statute mandated that the disclosure appear on its own page, and the defendant had included other information along with it. *Id.* at 885–86. We said that the plaintiff had alleged nothing more than a bare procedural violation. *Id.* at 887. He hadn't claimed that the improper format had caused him to misunderstand the disclosure, he hadn't asserted that he would have withheld consent if the information had been presented correctly, and he hadn't said that he was unaware that the prospective employer would obtain a credit report on him. *Id.* Instead, he had "alleged a statutory violation completely removed from any concrete harm or appreciable risk of harm." *Id.* Under *Spokeo*, we explained, that was not enough to satisfy Article III. *Id.*; *see also Meyers v. Nicolet Restaurant of De Pere, LLC,* 843 F.3d 724, 727 (7th Cir. 2016) (holding that the defendant's failure to truncate the expiration date from the plaintiff's credit card receipt did not put the plaintiff at any material risk of credit card fraud because he was the only one who ever saw the receipt). Similarly here, Casillas did not allege that she even read the disclosure, much less that she relied on it to her detriment.

Casillas's best case is from the Sixth Circuit, which sees things differently than we do. In *Macy v. GC Services Limited Partnership*, the defendant violated the very same requirements that Madison did here: it failed to notify the plaintiffs that they had to dispute their debts in writing to trigger the protections of the Fair Debt Collection Practices Act. 897 F.3d

747, 751 (6th Cir. 2018). Like Casillas, the plaintiffs did not al-
lege that they tried or had any intention of trying to contact
the debt collector to verify the debt. *Id.* at 758. Instead, they
claimed that not knowing about the writing requirement
"could lead the least-sophisticated consumer to waive or oth-
erwise not properly vindicate her rights under the [Act]." *Id.*
The Sixth Circuit held that the plaintiffs had alleged a concrete
injury because "[w]ithout the information about the in-writ-
ing requirement, Plaintiffs were placed at a materially greater
risk of falling victim to 'abusive debt collection practices.'" *Id.*
(quoting 15 U.S.C. § 1692(e)).

We disagree. It is certainly true that the omission put those
consumers who sought to dispute the debt at risk of waiving
statutory rights. But it created no risk for the plaintiffs in that
case, who did not try (and, for that matter, expressed no plans
to try) to dispute the debt. It is not enough that the omission
risked harming *someone*—it must have risked harm *to the
plaintiffs*.[3] As the Supreme Court has explained, "the 'injury in
fact' test requires more than an injury to a cognizable interest.
It requires that the party seeking review be himself among the
injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972). Be-
cause *Macy* didn't require the plaintiffs to allege a risk of harm

---

[3] Casillas insists that the "unsophisticated consumer" standard, which
we have applied elsewhere in our precedent, means that standing exists
whenever a debt-collection letter might have misled a naive consumer.
But the "unsophisticated consumer" standard is a rule for interpreting a
debt-collection letter to determine whether it is misleading. *See Williams v.
OSI Educ. Servs., Inc.*, 505 F.3d 675, 677–78 (7th Cir. 2007). It is not a rule
permitting those who have not been injured to vindicate the rights of those
who have.

to themselves, it is inconsistent with *Groshek* and *Meyers*, not to mention *Spokeo* itself. We decline to follow it.[4]

Casillas also seeks help from the Second Circuit, but the case that she cites is distinguishable. In *Strubel v. Comenity Bank*, the plaintiff sued a bank because it provided, and she signed, a credit card agreement that allegedly omitted several disclosures required by the Truth in Lending Act. 842 F.3d 181, 185 (2d Cir. 2016). Casillas highlights one omission in particular: the bank's failure to notify the plaintiff that "a consumer dissatisfied with a credit card purchase must contact the creditor in writing or electronically." *Id.* at 190. The Second Circuit said that a consumer has a concrete interest in "avoid[ing] the uninformed use of credit," *id.* (quoting 15 U.S.C. § 1601(a)); thus, failing to notify the consumer of her obligations before she began exercising that credit created a serious risk that she would "unwittingly [] lose the very credit rights the law affords" her, *id.* The court held that the plaintiff had sufficiently alleged an injury in fact.

There is some facial similarity between the omission in *Strubel* and the one in Casillas's case: both disclosures neglected to tell a consumer that she must exercise her rights in writing. But as the Second Circuit explained, the disclosure in *Strubel* was supposed to come at the beginning of an open-ended credit relationship between the plaintiff and the bank; it explained how she could protect her rights with respect to

---

[4] Because this opinion creates a circuit split, it has been circulated among all judges of this court in regular active service. *See* 7th Cir. R. 40(e). A majority did not favor a rehearing en banc. Chief Judge Wood, joined by Circuit Judges Rovner and Hamilton, filed a dissent from the denial of rehearing en banc, which is attached to this opinion.

the transactions that she would undertake during that relationship. *Id.* at 190–91. The faulty disclosure thus put the plaintiff at some risk, because any subsequent transaction might be unsatisfactory, thereby triggering her obligation to object in writing.

We don't offer an opinion on the Second Circuit's conclusion that the risk of harm to that plaintiff was substantial enough to be concrete. For present purposes, it is sufficient to note that *Strubel* is materially different from this case. When the plaintiff in *Strubel* received the incomplete notice, she did not yet know whether she would ever object to a credit card purchase. When Casillas received the incomplete notice, she already knew that she would not dispute her debt. In other words, unlike Casillas, the plaintiff in *Strubel* alleged at least a possibility that the omission would hurt her.[5]

## B.

Casillas has a back-up argument. She claims that it doesn't matter whether she alleged a material risk of harm to her debt-verification rights because she suffered another kind of harm that was sufficiently concrete: an "informational in-

---

[5] We also note that the Second Circuit did not hold that every omission caused the plaintiff concrete harm. The bank had also failed to tell her that she was obligated to provide a creditor with timely notice to stop automatic payment of a disputed charge. *Id.* at 191. But the plaintiff's card did not offer automatic payment, so the Second Circuit held that the omission of the disclosure had posed no risk of harm to her. *Id.* at 191–92. In this respect, the plaintiff in *Strubel* was similarly situated to Casillas: the information that she did not receive was information that she would not have used. The Second Circuit's resolution of this claim supports our conclusion that Casillas lacks standing.

jury." According to Casillas, both the Supreme Court's precedent and ours hold that the deprivation of information is itself a concrete harm. Thus, she says, she did not need to allege anything more—for example, that she lost or was at risk of losing her statutory rights because she communicated orally with Madison. As she sees it, she has standing simply because Madison failed to provide her all of the information required by § 1692g(a)(4) and (5); being deprived of information was itself the injury. But Casillas misunderstands the relevant precedent.

The seminal cases addressing "informational injury" are *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), and *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440 (1989). In *Akins*, a group of voters sued to compel a political organization to disclose information that the voters believed the Federal Election Campaign Act required the organization to provide. 524 U.S. at 15–16. The Court held that those voters had alleged an injury in fact sufficient to confer standing— namely, "their inability to obtain information … that, on [the voters'] view of the law, the statute requires that [the political organization] make public." *Id.* at 21. In *Public Citizen*, the plaintiff sought the disclosure of consultations between the president and the American Bar Association regarding potential judicial nominees. When the Department of Justice refused to provide that information, the plaintiff sued it for violating the Federal Advisory Committee Act. 491 U.S. at 443, 447. The Court held that those seeking disclosure under that

law, like those seeking disclosure under the Freedom of Information Act, need to show nothing more "than that they sought and were denied specific agency records." *Id.* at 449.[6]

Casillas treats *Akins* and *Public Citizen* as if they settle the matter of her own standing. But those cases hold that the *denial of information subject to public disclosure* is one of the intangible harms that Congress has the power to make legally cognizable. *See Spokeo*, 136 S. Ct. at 1549 (discussing "Congress' role in identifying and elevating intangible harms"). Public-disclosure laws—sometimes called "sunshine laws"—protect the public's interest in evaluating matters of concern to the political community. And denying a request for information under a sunshine law necessarily implicates that interest. In *Akins*, the denial "directly related to voting, the most basic of political rights." 524 U.S. at 24–25. In *Public Citizen*, the denial hampered the plaintiffs' ability to "participate more effectively in the judicial selection process." 491 U.S. at 449.

Casillas, of course, did not allege that she sought and was denied information pursuant to a sunshine law. Indeed, she did not *seek* information at all. *See id.* (explaining that a plaintiff who "is not seeking to compel [the defendant] to provide him with information" has not suffered the kind of concrete harm that *Akins* and *Public Citizen* recognize). The Fair Debt

---

[6] Since *Spokeo* was decided, we too have recognized this kind of public-disclosure "informational injury" as sufficiently concrete to confer standing, albeit in the context of a common-law rather than a statutory cause of action. In *Carlson v. United States*, the plaintiff, a historian, asserted a common-law right of access to grand-jury records from a World War II–era espionage investigation. 837 F.3d 753, 755–56 (7th Cir. 2016). Citing *Akins* and *Public Citizen*, we held that "Carlson's injury-in-fact is the denial of access to government documents that he has a right to seek." *Id.* at 758.

Collection Practices Act protects an entirely different interest, and as we have already said, Casillas alleged no material risk of harm to that interest. Moreover, while the plaintiffs in the public-disclosure cases alleged that the respective defendants "impaired [their] ability to use [the information] for a substantive purpose that the statute envisioned," *Robertson*, 902 F.3d at 694, Casillas did not allege that she would have used the information at all.

Casillas's last line of defense is *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), which she claims stands for the proposition that a plaintiff suffers a concrete "informational injury" any time a defendant violates a statutory disclosure requirement. There, the plaintiff, who was black, sued the defendant after it falsely told her that an apartment complex had no vacancies. The plaintiff had no intention of actually renting an apartment; she had requested the information because she suspected that the defendant was engaged in unlawful racial steering practices. *Id.* at 368–69. The Court held that she had alleged a concrete injury under the Fair Housing Act, which "conferred on all 'persons' a legal right to truthful information." *Id.* at 373. Casillas says that the Fair Debt Collection Practices Act has likewise conferred on all debtors a right to complete information about their statutory rights. And as in *Havens Realty*, Casillas says, it is enough for her to claim that she was deprived of the information to which she was legally entitled—even if she wouldn't use it.

But the bare harm of receiving inaccurate or incomplete information is not the harm that the plaintiff in *Havens Realty* alleged. She claimed the harm of being lied to because of her race. That was an invasion of the very interest that the Fair Housing Act protects: freedom from racial discrimination in

the pursuit of housing. *Id.* at 373. Indeed, the statute itself does not prohibit all misrepresentations about housing availability, but only those made "because of race" or some other protected characteristic. 42 U.S.C. § 3604(d). In holding that the plaintiff could proceed without showing any additional harm, the Court recognized this kind of racial discrimination as an intangible injury that Congress has the authority to identify as legally cognizable. That is obviously neither the harm Casillas claimed nor the one that the Fair Debt Collection Practices Act protects against.[7]

## C.

In sum, Casillas alleged nothing more than a bare procedural violation of the Fair Debt Collection Practices Act. That is insufficient for purposes of Article III. *See Spokeo*, 136 S. Ct.

---

[7] In *Church v. Accretive Health, Inc.*, the Eleventh Circuit held that the Fair Debt Collection Practices Act created a "right to information" that is analogous to the right protected by *Havens Realty*. 654 F. App'x 990, 994 (11th Cir. 2016) ("Just as the tester-plaintiff had alleged injury to her statutorily-created right to truthful housing information, so too has Church alleged injury to her statutorily-created right to information pursuant to the [Fair Debt Collection Practices Act]."). It thus held that a bare procedural violation of the Act's disclosure requirements is a "concrete injury" sufficient to establish standing. *Id. Church* does not give us pause. For one thing, it is an unpublished opinion that does not establish law even within the Eleventh Circuit. For another, the debt collector in *Church* failed to make *any* of the disclosures required by § 1692g(a), and we address only whether Congress has created a bare right to information in § 1692g(a)(4) and (5). But to the extent that *Church* generally recognizes a bare procedural violation of any disclosure requirement as a concrete injury, it is at odds with *Groshek* and *Robertson*. Moreover, for the reasons we discuss above, it misreads *Havens Realty*. The Sixth Circuit has expressly rejected *Church*, *see Lyshe v. Levy*, 854 F.3d 855, 859–861 (6th Cir. 2017), and to the extent that it is inconsistent with our opinion in this case, we do as well.

at 1549. And while she asks that she be given the opportunity to file an amended complaint on remand if we find jurisdiction lacking, she has not indicated—either here or in the district court—what facts she would allege to cure the jurisdictional defect. The district court denied her request for leave to file an amended complaint, and it was right to do so. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("[A] district court does not abuse its discretion by denying a motion for leave to amend when the plaintiff fails to establish that the proposed amendment would cure the deficiencies identified in the earlier complaint.").

## III.

Finally, we note that Casillas has forfeited her separate claim that the incomplete disclosure violated the Act's prohibition on "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Although her complaint presented that alleged violation as a separate claim, it was substantively identical to her § 1692g claim. On appeal, she has not challenged the district court's dismissal of her § 1692f claim, so she has forfeited any challenge to it. *See Sansone v. Brennan*, 917 F.3d 975, 983 (7th Cir. 2019).

* * *

Casillas caught the defendant in a mistake, but it was not one that hurt her. The district court's judgment is AFFIRMED.

WOOD, *Chief Judge*, with whom ROVNER and HAMILTON, *Circuit Judges*, join, dissenting from the denial of *en banc* consideration. From 10,000 feet above the ground, the decision in this case that plaintiff Paula Casillas lacks standing to pursue her claim under the Fair Debt Collection Practices Act ("the Act") against the debt-collection firm of Madison Avenue Associates seems sensible enough. Article III demands injury-in-fact, a causal link, and redressability, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). As our panel sees this case, Casillas founders on the first criterion: actual injury. But the plot thickens when we look more particularly at the violation she asserted: Madison's failure to warn her, as required by 15 U.S.C. § 1692g, that a dispute over the debt or a request for information about the original creditor is ineffective unless it is made *in writing*. The panel regards that omission as a "bare procedural injury" and thus not one that can support standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). In so concluding, this court has created a conflict with the Sixth Circuit, which held otherwise in *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747 (6th Cir. 2018), on materially indistinguishable facts.

Recognizing that it was opening up this rift, the panel circulated its opinion to all judges of the Seventh Circuit in regular active service pursuant to Local Rule 40(e); the question was whether this is an important enough issue to warrant plenary consideration by the en banc court. A majority of my colleagues have answered that question in the negative, thereby signaling their approval of the panel's decision. I respectfully disagree with that assessment. The panel's opinion will make it much more difficult for consumers to enforce the protections against abusive debt collection practices that Congress conferred in the Act. That alone is troublesome. But what

troubles me even more is the light this case shines on the need for a clear test in this circuit to distinguish between statutory protections that create, on the one hand, a "bare procedural injury" that does not support standing, and, on the other hand, statutory protections for the type of concrete, particularized, and actual or imminent injury that meet Article III standards. In my view, the rejection of standing in the case before us is not so self-evident that we should resolve it using the truncated Rule 40(e) process. We should instead have a full adversarial presentation before the en banc court.

My concerns are both procedural and substantive. I begin with procedure. In demanding proof of injury, we need to guard against pushing a merits judgment into the Article III injury-in-fact inquiry; we also need to ensure that we are not, *de facto*, demanding fact pleading. The Supreme Court underscored the standing/merits distinction in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), in which it took care to distinguish between an adequate allegation of injury-in-fact for standing purposes and the question whether that asserted injury fell within the scope of the statute on which the plaintiff was relying (there, the Lanham Act). *Id.* at 125–28. It is possible to point to a real injury (and thus pass the Article III hurdle) but still lose on the merits for failing to state a claim on which relief can be granted. See FED. R. CIV. P. 12(b)(6).

We additionally need to be sure that we are not returning to a fact pleading regime, as it is not required or even acceptable under Federal Rule of Civil Procedure 8(a)(2) and it is not specifically required under this Act. We repeatedly have stressed that the Federal Rules of Civil Procedure use a notice-pleading standard, not a fact-pleading standard. A complaint

need not include allegations about every element of a claim, as long as it meets the plausibility standard established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Finally, nothing in *Twombly* or *Iqbal* changed the rule requiring both facts and reasonable inferences from those facts to be taken in the pleader's favor at the earliest stages of the litigation. Thus, for example, a person may plead that she was injured by a statutory violation. If she fails to prove that injury in the end, the court should conclude that she loses on the merits, not that she never had Article III standing to begin with. The panel opinion takes a step toward both unnecessary heightened requirements.

From a substantive point of view, as the panel said, plaintiff Casillas "must show that the violation [of the Act] harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Ante* at 5 (cleaned up), citing *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017). I agree with that statement. Where I believe the panel is on shakier ground—shaky enough to warrant full en banc attention—is in its application of that standard.

It is helpful in this connection to look at the statutory provision that lies at the center of this dispute:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's *written request* within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a) (emphasis added). In particular, we are concerned with the requirements in section 1692g(a)(4) and (5) that the consumer must communicate with the debt collector *in writing*. Failure to do that is anything but a picky procedural gaffe. Section 1692g(b) specifies that if the consumer makes such a written request, "the debt collector shall cease collection of the debt, or any disputed portion thereof," until the debt collector takes the requested steps. The right to be left alone is a crucial part of the congressionally mandated scheme to eliminate abusive and unfair tactics from the debt-collection business.

It is also worth noting that people might not appreciate the need for a written record of their dealings with the debt collector and thus without a reminder that they must reduce their concerns to writing, they are likely to forfeit the important substantive rights the Act provides for them. When they receive a letter, they are often encouraged to call a 1-800 telephone number. But someone who responds to a debt-collection letter in that way will be put into a "Gotcha!" situation. No notification in writing equals greatly diminished protection under the Act.

It is a fair inference from Casillas's complaint that Madison's omissions at a minimum put her in imminent risk of losing the many protections in the Act that are designed to regulate the debt-collection process as it goes forward. The right to verification, the right to have the name and address of the original creditor, the right to cessation of debt-collection activities, and others, are far from bare procedural protections—they are protections that serve as the gateway to the Act's substantive regime. The Supreme Court confirmed in *Spokeo* that intangible harms defined by Congress can qualify as injury-in-fact. 136 S. Ct. at 1549. The only type of injury it ruled out was "a bare procedural violation, divorced from any concrete harm." *Id.* In addition, standing is not limited to cases in which the plaintiff already has suffered the harm. It may be "actual *or imminent*." *Id.* at 1548, citing *Lujan*, 504 U.S. at 560 (emphasis added). Read in the proper light, Casillas's pleadings put forward enough to infer an imminent concrete and particular injury.

The panel in our court reasons that "[b]ecause Madison's mistake didn't put Casillas in harm's way, it was nothing more than a 'bare procedural violation.'" *Ante* at 6. It said this

because Casillas's pleadings did not spell out the various types of harm that loomed because of Madison's failure to warn her that communications that were not in writing were a waste of time, and that but for the omitted information, Casillas would have (or would have considered) using the statutory procedures to assert her rights. But surely the panel means to do more than alert future plaintiffs in these cases that they should plead that they would stand on their rights and to highlight the imminent loss of numerous substantive protections afforded under the Act. A simple amendment to the complaint would solve that problem.

Turning to substance, the key to differentiating between a "bare" procedural right and a right grounded in substantive interests lies in the concrete interest that the procedural right is designed to protect. The Sixth Circuit captured this insight nicely in *Macy*, where it said that "to determine whether a procedural violation manifests injury in fact, a court properly considers whether Congress conferred the procedural right in order to protect an individual's concrete interests." 897 F.3d at 754, quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016).

The point is simple: what, and whose, interest is the procedural requirement designed to serve? If the procedural rule stated that all notices had to be printed on three-holed paper, then it might be fair to say that this was a purely administrative rule that did not implicate consumer rights. Or, as the Supreme Court observed in *Spokeo*, if the envelope reflected a mistaken zip code but the letter reached the consumer despite that error, there is no possible *further* injury and one can say conclusively that no harm resulted from the mistake. Yet some

procedures—perhaps many—exist in order to protect under-
lying substantive interests rather than for simple administra-
tive convenience. As the Sixth Circuit pointed out, the Ninth
Circuit's decision in *Spokeo* on remand from the Supreme
Court helpfully describes the type of procedural injury that
implicates harm to those concrete substantive interests:

> [A]n alleged procedural violation [of a statute] can by
> itself manifest concrete injury where Congress con-
> ferred the procedural right to protect a plaintiff's con-
> crete interests and where the procedural violation pre-
> sents a risk of real harm to that concrete interest.

*Macy*, 897 F.3d at 755, quoting from *Robins v. Spokeo, Inc.*, 867
F.3d 1108, 1113 (9th Cir. 2017).

By way of analogy, fundamental due process requires no-
tice and an opportunity to be heard, not for the fun of reading
the notice and listening to one's own voice, but because, as
*Mathews v. Eldridge* said, those rights guard against mistakes
when the government is poised to deprive someone of a pro-
tected interest. 424 U.S. 319, 333–35 (1976). But taken to the
extreme, even the right to notice and an opportunity to be
heard might be thought to be "bare" procedural rights, be-
cause neither one assures any particular outcome for the per-
son involved.

Given the fact that a person who is not told that the objec-
tions under sections 1692g(a)(4) and (5) must be made in writ-
ing, or else they are ineffective to preserve a host of rights un-
der the Act, there is a strong case to be made that this case falls
on the concrete injury side of the line, not on the "bare proce-
dural" side. Unlike the mistaken zip code, the likelihood of
ongoing injury from forfeited rights, misunderstandings, and

abusive practices is great enough to support standing. Madison may have substantive defenses that apply to it, and so I express no view on the ultimate merits of this case. I also express no view on the appropriateness of class certification. I dissent, however, from the decision that the question whether Casillas herself has pleaded enough to pass the injury-in-fact bar for Article III standing is so straightforward, and the Sixth Circuit's view so misguided, that we should not hear this case en banc.