[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12177
Non-Argument Calendar

_____

D.C. Docket No. 2:18-cv-01254-JHE

ERICA COOPER,

                                        Plaintiff - Appellant,

versus

ATLANTIC CREDIT & FINANCE INC,
a Virginia corporation,
MIDLAND FUNDING LLC,
a Delaware limited liability company,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 28, 2020)

Before MARTIN, ROSENBAUM and MARCUS, Circuit Judges.

PER CURIAM:

    Erica Cooper appeals from the dismissal of her class action complaint against

Atlantic Credit & Finance, Inc. and Midland Funding, LLC (the "Appellees"), in this

action arising out of their attempt to collect a debt she owed. Cooper alleges that the Appellees violated the Fair Debt Collection Practices Act ("FDCPA") when they sent a second collection letter that improperly "overshadowed" and/or "contradicted" the statutorily required validation notice contained in the first letter and that this constituted the use of unfair and unconscionable means to collect a debt. The district court dismissed the complaint for failure to state a claim under the FDCPA. On appeal, the Appellees argue that Cooper lacks standing to sue. After careful review, we agree with the Appellees and vacate and remand for the district court to dismiss the case without prejudice for lack of subject matter jurisdiction.

The undisputed facts are these. In October 2017, Atlantic and Midland sent Cooper two letters as part of their efforts to collect a debt Cooper owed on a credit card issued by Synchrony Bank, which she used to pay for dental services. On October 3, 2017, the Appellees sent the first letter, which contained a FDCPA-required "validation notice." Under the FDCPA, a debt collector must include, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," a written notice of the consumer's right to dispute the validity of the debt within thirty days after receipt of the notice. 15 U.S.C. § 1692g(a). If the consumer exercises this right, the debt collector must suspend its collection efforts pending a response to the request for verification of the debt. Id. § 1692g(b). Also, during the thirty-day validation period, a debt collector may not

engage in any collection activities or communications which "overshadow" or are "inconsistent with the disclosure of the consumer's right to dispute the debt." Id.

Before the thirty-day validation period expired, on October 13, the Appellees sent Cooper a second letter, telling her that Midland was considering "forwarding [her] account to an attorney in [her] state for possible litigation." The second letter gave her two payment options to resolve the debt: (1) a one-time reduced repayment due October 31, 2017; and (2) biweekly payments as low as $25.00 until the balance was paid in full. The second letter said: "These payment opportunities do not alter or amend your validation rights as described in the previous letter to you."

In August 2018, Cooper filed this action. The complaint alleged that Atlantic and Midland violated 15 U.S.C. § 1692g(b) by sending the second letter, which improperly "overshadowed" and/or "contradicted" the validation notice contained in the first letter, and that their conduct constituted the use of "unfair" and "unconscionable" means to collect a debt in violation of 15 U.S.C. § 1692f. It further alleged that Atlantic and Midland's "conflicting collection demands left [Cooper] confused about her statutory rights to dispute the debt and seek validation, as well as whether she had the full 30 days to dispute the debt and demand validation."

The district court dismissed the complaint for failure to state a claim under both provisions, but did not address whether Cooper had Article III standing to bring suit, an issue that Atlantic and Midland had not raised. This timely appeal follows.

3

We review de novo questions about subject matter jurisdiction, including standing. Elend v. Basham, 471 F.3d 1199, 1204 (11th Cir. 2006). "Questions of subject matter jurisdiction may be raised at any time." Nicklaw v. Citimortgage, Inc., 839 F.3d 998, 1001 (11th Cir. 2016). When ruling on standing at the pleading stage, we "must accept as true all material allegations of the complaint, and must construe [it] in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975). The party invoking federal jurisdiction bears the burden of establishing standing. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

Article III extends "'[t]he judicial power of the United States' . . . only to 'Cases' and 'Controversies.'" Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (quoting U.S. Const. art. III, §§ 1–2). Standing doctrine is "rooted in the traditional understanding of a case or controversy" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Id. The three requirements for Article III standing are familiar: the plaintiff must allege that she suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"; that injury must be "fairly traceable to the challenged action of the defendant"; and it must be "likely . . . that the injury will be redressed by a favorable decision." DiMaio v. Democratic Nat. Comm., 520 F.3d 1299, 1302 (11th Cir. 2008) (quoting Lujan, 504 U.S. at 560–61).

4

In order to satisfy the injury-in-fact requirement of standing, a plaintiff may show that he "has sustained or is immediately in danger of sustaining some direct injury." Corbett v. Transp. Sec. Admin., 930 F.3d 1225, 1232 (11th Cir. 2019), cert. denied, 140 S. Ct. 900 (2020) (quotations omitted). "Plaintiffs must demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) (quotations omitted). "Abstract injury is not enough." Id.

When a plaintiff alleges an intangible injury from a statutory violation, history and the judgment of Congress "play important roles" in determining whether the injury is sufficiently concrete. Spokeo, 136 S. Ct. at 1549. Plaintiffs do not "automatically satisf[y] the injury-in-fact requirement whenever a statute" grants them the right to sue; they still must allege a "concrete" harm that is more than a "bare procedural violation." Id. As is clear, "[f]or an injury to be particularized, it must affect the plaintiff in a personal and individual way." Id. at 1548 (quotations omitted). A plaintiff need not wait for an injury to occur, so long as he "is immediately in danger of sustaining some direct injury" as a result of the challenged official conduct and the injury or threat of injury is both "real and immediate," not "conjectural" or "hypothetical." Corbett, 930 F.3d at 1232 (quotations omitted); see

also Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) ("A threatened injury must be certainly impending to constitute injury in fact.") (quotations omitted).

Here, Cooper has not alleged an injury-in-fact sufficient to confer standing. The essence of her injury, according to the complaint, is that Atlantic and Midland's alleged violations of §§ 1692g and 1692f left her "confused about her statutory rights to dispute the debt and seek validation, as well as whether she had the full 30 days to dispute the debt and demand validation."[1]  However, under our precedent, these allegations, absent something more, are insufficient to establish that Cooper had standing to bring her claim.  We recently applied our standing case law to the FDCPA in Trichell v. Midland Credit Mgmt., Inc., No. 18-14144, __ F.3d __, 2020 WL 3634917 (11th Cir. July 6, 2020).  There, we held that the plaintiffs -- who had received allegedly misleading and unfair debt-collection letters that gave the false impression that the debts they had previously owed were still legally enforceable -- had not suffered any injury-in-fact under the FDCPA.  As we explained, the plaintiffs had not alleged that they "made any payments in response to the defendants' letters -- or even that [they] wasted time or money in determining whether to do so.  Instead, when confronted with the standing issue during oral

---

[1] In her initial brief, Cooper also argues that the collections means used would "contribute significantly to the grief and anxiety experienced by consumers in debt when they receive incessant, contradictory collection communications."  Because she did not allege those harms in her complaint, we will not consider them.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." (quotations omitted)).

argument, [the plaintiffs] asserted only intangible injuries, in the form of alleged violations of the FDCPA." Id. at __, 2020 WL 3634917 at *3. Considering the "history" of the common law and "the judgment of Congress" in enacting the FDCPA, we found that both factors cut against finding these kinds of intangible injuries to be sufficient to constitute a concrete injury for purposes of Article III standing. Id. at __, 2020 WL 3634917 at *3–*5.[2]

Here, Cooper's alleged injuries are just as inchoate, if not more so. She does not allege that, without the purportedly confusing language in the second letter, she would have disputed the debt or sought validation of the debt within the thirty-day validation period, that she had any doubt regarding the validity of the debt, or that she would have accepted one of the payment options in the second letter. Nor does

---

[2] The Seventh Circuit recently took the same approach in Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329 (7th Cir. 2019). In Casillas, the plaintiff alleged that the FDCPA-required notice improperly failed to specify that her notification of dispute or request for provision of the original creditor must be in writing. 926 F.3d at 332. The plaintiff there, like Cooper, "did not allege that she tried -- or even planned to try -- to dispute the debt or verify that [a credit union] was actually her creditor." Id. This was relevant, said the court, since the plaintiff was "not at any risk of losing her statutory rights because there was no prospect that she would have tried to exercise them." Id. at 334. To establish standing, a plaintiff must instead "show that the violation harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." Id. at 333. The court therefore concluded that the plaintiff had not alleged anything more than a "bare procedural violation." Id. at 334 (quoting Spokeo, 136 S. Ct. at 1549).

As for the other Seventh Circuit cases that Cooper cites, from the Seventh Circuit itself and its district courts, none of them are persuasive, and, of course, none are binding on us. So, for example, in Lavallee v. Med-Sols., LLC, 932 F.3d 1049 (7th Cir. 2019), the plaintiff had "never received any of the disclosures required by § 1692g(a)," and had already been sued without the benefit of the mandatory disclosures. Id. at 1053. These two factors provided concreteness to her injury. Id. They are not present in Cooper's case -- Cooper received a validation notice in the first letter and was not a defendant in a collection suit.

7

she allege that she suffered any harm beyond the alleged statutory violations, or that Atlantic and Midland ever made any further attempts to collect the debt at issue any time after the October 13, 2017 second letter, prior to the filing of the complaint in August 2018.  Indeed, like one of the plaintiffs we found to lack standing in Trichell, who "assert[ed] only that the letters 'would lead a consumer to believe that they [sic] had to pay this debt to avoid being sued, credit reported, or having to pay the full amount at some point in the future,'" Cooper talks only of her confusion without any possible financial or legal consequences.  Id. at __, 2020 WL 3634917 at *6.

Further, Cooper's injury is much more attenuated than the other plaintiff's injury in Trichell, who alleged that the letter he received "put him 'into a difficult position' because it 'entice[d]' him to make a payment by offering significant savings on his debts," and that "if he had acted on Midland's letter and made a payment on his debt, he would have 'expos[ed] him[self] to a potential lawsuit that he would not have previously been exposed to.'" Id. at __, 2020 WL 3634917 at *15 (Martin, J., concurring in part and dissenting in part).  In contrast, Cooper does not allege that her confusion about her statutory rights resulted in her not disputing the debt, that her confusion would have resulted in her utilizing one of the payment options in the second letter despite the debt being invalid, that her confusion would have resurrected any previously invalid debt, or that the confusion would have resulted in any other negative consequences.

8

In short, Cooper does not allege any particularized injury; she simply does not say she was affected in any meaningful way by the letter.  See id.; see also Nicklaw, 839 F.3d at 1003 (finding that the plaintiff alleged "neither a harm nor a material risk of harm that the district court could remedy" where he suffered no concrete injury when the certificate of discharge of his mortgage was not timely recorded); Corbett, 930 F.3d at 1239 (11th Cir. 2019) ("[P]arties cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending," in a case where the plaintiff claimed that airport security screening rules could have affected his future travel plans, but he admitted he was not changing his future travel plans) (quotations omitted).  All Cooper says, at most, is that she was confused, but in this context, her asserted injury of confusion was "conjectural" or "hypothetical," because she has not alleged any actual harms that arose from her confusion.  Lyons, 461 U.S. at 101–02.  Without more, this asserted injury is insufficient to confer standing.

We are also unpersuaded by Cooper's argument that because she is suing under the FDCPA, what she calls a "private attorney general statute," we should lower the standard she must meet to demonstrate a concrete injury.  Cooper concedes that "[f]ew Courts considering Article III standing challenges for claims brought pursuant to the FDCPA and other private attorney general statutes -- including the Seventh Circuit in Casillas -- recognize the significance of this."  In fact, Cooper has

not cited any controlling authority even hinting that "private attorneys general" statutes require a reduced showing of Article III injury.[3]  Indeed, Spokeo itself involved a statute, the Fair Credit Reporting Act of 1970, 136 S. Ct. at 1544, which courts have described as making use of the "private attorneys general" concept.  See, e.g., Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) ("We have no doubt that Congress intended in authorizing attorney's fees in lawsuits under the FCRA, 15 U.S.C. §§ 1681n, 1681o, to make use of the private attorney general concept.").  Nothing in Spokeo suggests that a claim arising under statutes like this one are subject to a lesser or different Article III burden.

Accordingly, we vacate the district court's holding to the extent it dismisses the complaint on the merits for failure to state a claim, and remand with instructions that the district court reenter an order dismissing the case for want of jurisdiction.  See DiMaio, 520 F.3d at 1303 ("Where dismissal can be based on lack of subject matter jurisdiction and failure to state a claim, the court should dismiss on only the jurisdictional grounds.  This dismissal is without prejudice.") (quotations omitted).

---

[3] The out-of-circuit cases that Cooper cites for her proposition that the FDCPA is a "private attorney general statute" did not address standing.  See Russell v. Absolute Collection Servs., 763 F.3d 385, 393 (4th Cir. 2014); Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1021 (9th Cir. 2012); Tolentino v. Friedman, 46 F.3d 645, 651 (7th Cir. 1995).  As for the remaining cases she cites, she does not cite to any controlling majority opinions.  See Spokeo, 136 S. Ct. at 1552 (Thomas, J., concurring); Jeffries v. Volume Servs. Am., Inc., 928 F.3d 1059, 1066, 1070 (D.C. Cir. 2019) (Rogers, J., concurring) (involving the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), with the majority opinion noting that "not every FACTA violation creates a concrete injury in fact").

10

**VACATED AND REMANDED.**