In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3514

LINDA GUNN and CHRISTOPHER GUNN,

*Plaintiffs-Appellants*,

*v.*

THRASHER, BUSCHMANN & VOELKEL, P.C.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:19-cv-01385-JMS-MPB — **Jane Magnus-Stinson**, *Chief Judge*.

ARGUED MAY 19, 2020 — DECIDED DECEMBER 15, 2020

Before EASTERBROOK, BRENNAN, and ST. EVE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Linda and Christopher Gunn fell behind in paying assessments owed to their homeowners' association. When the debt reached about $2,000, the association hired a law firm (Thrasher, Buschmann & Voelkel). It sent the Gunns a letter demanding payment. One sentence in this letter reads:

> If Creditor has recorded a mechanic's lien, covenants, mortgage, or security agreement, it may seek to foreclose such mechanic's lien, covenants, mortgage, or security agreement.

This letter did not induce the Gunns to pay, and the law firm filed suit in state court—but the remedy it sought was damages for breach of contract rather than foreclosure. The Gunns replied with this suit under the Fair Debt Collection Practices Act (FDCPA), part of which forbids false or misleading statements in dunning letters. 15 U.S.C. §1692e(2), (4), (5) & (10). Although the Gunns acknowledge that the letter's statement is true both factually and legally, they contend that it must be deemed false or misleading because the law firm would have found it too costly to pursue foreclosure to collect a $2,000 debt.

The district court dismissed the complaint on the pleadings, ruling that a true statement about the availability of legal options cannot be condemned under the Act just because the costs of collection may persuade a law firm to seek one remedy (damages) rather than another (foreclosure). 2019 U.S. Dist. LEXIS 195718 (S.D. Ind. Nov. 12, 2019), reconsideration denied, 2019 U.S. Dist. LEXIS 219829 (S.D. Ind. Dec. 23, 2019).

The parties' briefs in this court locked horns on the question whether a true statement violates the statute when it mentions a remedy that a creditor probably will not use. In addition to supporting the district court's legal analysis, the law firm observes that sometimes creditors will take steps that seem uneconomic when viewed by themselves but that are necessary to make threats credible. In the language of game theory, rational creditors pursue mixed strategies. The Gunns do not offer any data showing that homeowners' as-

sociations never seek foreclosure as a means to collect unpaid assessments.

But we do not reach the merits. Like the district court's opinions, neither side's brief mentions an antecedent question: whether the complaint presents a case or controversy within the scope of Article III. For neither the complaint nor the plaintiffs' brief explains how the contested sentence injured the Gunns. They did not pay anything in response and do not say that the sentence about foreclosure could have reduced their credit rating. And the letter could not have affected their ownership interest. That would require a foreclosure *judgment* in state court—and, even after such a judgment, owners may retain possession by paying the debt and redeeming their property interests. We directed the parties to file supplemental briefs addressing the question whether plaintiffs have standing to sue. We directed their attention to *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329 (7th Cir. 2019), both of which hold that concrete harm is essential to standing. *Spokeo* concerns the Fair Credit Reporting Act, while *Casillas* concerns the same statute as the Gunns' suit.

The Gunns' main argument is that they were annoyed or intimidated by the letter, which as a matter of law satisfies the constitutional injury requirement. The principal decision on which they rely is *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020). It does not help them. *Gadelhak* dealt with uninvited and unintelligible text messages, which intruded on the plaintiffs' seclusion. Pestiferous text messages, spam phone calls, and unwelcome faxes can cause cognizable injury, for the reasons we gave in *Gadelhak* when explaining how the common law treats noises and other aggravating intru-

sions. Yet the Gunns do not contend that the law firm's letter was a forbidden invasion of privacy. They owned a home and owed a debt; the association and its law firm were entitled to communicate with them, no matter how unwelcome the Gunns found the demand for payment. Their claim is that legally sound language in an otherwise proper letter violated the Act. Nothing in *Gadelhak* implies that this has ever been deemed a concrete injury.

Consider the upshot of an equation between annoyance and injury. Many people are annoyed to learn that governmental action may put endangered species at risk or cut down an old-growth forest. Yet the Supreme Court has held that, to litigate over such acts in federal court, the plaintiff must show a concrete and particularized loss, not infuriation or disgust. See, e.g., *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Similarly many people are put out to discover that a government has transferred property to a religious organization, but *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982), holds that a sense of indignation (= aggravated annoyance) is not enough for standing. See also, e.g., *Freedom from Religion Foundation, Inc. v. Obama*, 641 F.3d 803 (7th Cir. 2011) (no standing to litigate about a presidential declaration of a day of prayer, when the declaration vexes the plaintiff but does not cause concrete loss).

Indeed, it is hard to imagine that anyone would file any lawsuit without being annoyed (or worse). Litigation is costly for both the pocketbook and peace of mind. Few people litigate for fun. Yet the Supreme Court has never thought that having one's nose out of joint and one's dander up creates a case or controversy. No one can doubt that the plain-

tiff in *Spokeo* was sore annoyed. If that were enough, however, then the very fact that a suit had been filed would show the existence of standing, and the need to have a concrete injury that could be cured by a favorable judicial decision would be abolished.

The Gunns make one additional argument: that *Spokeo* and *Casillas* involved procedural rights, while their claim arises under one of the Act's substantive provisions. That's true enough, but it does not show that they have standing. Article III of the Constitution does not distinguish procedural from substantive claims; it makes injury essential to all litigation in federal court. In *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020), where the plaintiff asserted the violation of a substantive right, the Supreme Court found no standing using the approach of *Spokeo*. And this court has recently held that the asserted violation of a substantive right conferred by the Fair Debt Collection Practices Act does not guarantee the plaintiff's standing. There must still be a concrete injury. See *Larkin v. Finance System of Green Bay, Inc.*, No. 18-3582 (7th Cir. Dec. 14, 2020). See also *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990 (11th Cir. 2020).

Because the Gunns do not contend that the contested sentence in the defendant's letter caused them any concrete harm, the judgment of the district court is vacated and the case remanded with instructions to dismiss for want of subject-matter jurisdiction.