In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 19-1400

AUDREY WADSWORTH,

*Plaintiff-Appellee,*

*v.*

KROSS, LIEBERMAN & STONE, INC.

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 8167 — **Virginia M. Kendall**, *Judge.*

———————————

ARGUED FEBRUARY 17, 2021 — DECIDED AUGUST 31, 2021

———————————

Before SYKES, *Chief Judge*, and FLAUM and ROVNER, *Circuit Judges*.

SYKES, *Chief Judge*. This case presents a problem that has become familiar to our circuit: alleged violations of the Fair Debt Collection Practices Act that have not caused the plaintiff any concrete harm. These claims allege nothing more than "bare procedural violation[s]," which Article III precludes us from adjudicating. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). We therefore reverse and re-

mand with instructions to dismiss for lack of subject-matter jurisdiction.

## I. Background

In September 2016 Pharmaceutical Research Associates, Inc. ("PRA"), hired Audrey Wadsworth as a study manager responsible for developing clinical trials. In its offer letter, PRA described a signing bonus that Wadsworth would receive—$3,750 payable after 30 days of employment, followed by another $3,750 payable after 180 days of employment. But there was a catch. If Wadsworth voluntarily ended her employment or PRA fired her for cause within 18 months of the second payment, she was obligated to repay the full bonus. In her employment agreement, which Wadsworth signed the day after she accepted the offer letter, she agreed to promptly reimburse PRA for any amounts owed as of the final date of her employment. Wadsworth collected both signing payments, but in September 2017, after completing one year of employment, PRA fired her.

Within a week, PRA tasked Kross, Lieberman, & Stone ("Kross"), a debt-collection agency, with clawing back the bonus payments. Kross mailed Wadsworth a collection letter shortly after her employment ended, and in the coming weeks, a Kross employee called Wadsworth by telephone four times. Wadsworth then sued Kross claiming that its letter and phone calls violated the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. §§ 1692 *et seq.*, in two ways. First, she claimed that Kross failed to provide complete written notice of her statutory rights within five days of the initial communication. 15 U.S.C. § 1692g(a). Second, she alleged that the Kross employee who called her never identified herself as a debt collector or

stated that she was attempting to collect a debt. *Id.* §§ 1692d(6), 1692e(11).

Both parties moved for summary judgment. Kross did not contest Wadsworth's allegations about its conduct but argued instead that the FDCPA is inapplicable for two reasons: the signing bonus was not a "debt" within the meaning of the Act, *id.* § 1692a(5), and the firm was not acting as a "debt collector" under the Act because Wadsworth's debt was not in default at the time of the letter and phone calls, *id.* § 1692a(6). The district court rejected both arguments and entered summary judgment for Wadsworth. Kross timely appealed.

## II. Discussion

The parties' briefs and the district judge's order focus on whether Wadsworth's obligation to PRA qualifies as a "debt" and whether Kross is a "debt collector" within the meaning of the FDCPA. But no one addressed a more fundamental issue: Wadsworth's standing to sue, which "is jurisdictional and cannot be waived." *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020). Because Wadsworth has not suffered a concrete injury traceable to Kross's alleged FDCPA violations, she lacks standing to sue and her suit must be dismissed on jurisdictional grounds.

To establish standing to sue in federal court, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. This case concerns the injury-in-fact requirement, which is the "[f]irst and foremost" of standing's three elements. *Steel Co. v. Citizens for a*

*Better Env't*, 523 U.S. 83, 103 (1998). The injury analysis often occurs at the pleading stage, where we are limited to the complaint's "general factual allegations of injury resulting from the defendant's conduct" to evaluate standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). But the burden increases at the summary-judgment stage: The plaintiff must "suppl[y] evidence of 'specific facts' that, taken as true, show each element of standing." *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 286 (7th Cir. 2020) (quoting *Lujan*, 504 U.S. at 561). Because we are reviewing a summary judgment, we must look to evidence in the record to evaluate whether Kross has suffered an injury in fact.

To be cognizable in federal court, an injury must be concrete; that is, it must be "'real,' and not 'abstract.'" *Spokeo*, 136 S. Ct. at 1548 (quoting Webster's Third New Int'l Dictionary 472 (1971)). Though "traditional tangible harms, such as physical harms and monetary harms," most readily qualify as concrete injuries, "[v]arious intangible harms can also be concrete." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021). "Congress has the power to define intangible harms as legal injuries for which a plaintiff can seek relief … ." *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 333 (7th Cir. 2019). Still, Congress must remain within the bounds of Article III in creating causes of action for intangible injuries, and even when it does, not every statutory violation implicates an interest that Congress sought to protect. *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064–65 (7th Cir. 2020). Therefore, a plaintiff cannot establish standing simply by pointing to a mere procedural violation of a statute. *Spokeo*, 136 S. Ct. at 1549; *Casillas*, 926 F.3d at 333. Rather, he "must show that the violation harmed or 'presented an "appreciable risk of harm" to the underlying

concrete interest that Congress sought to protect.'" *Casillas*, 926 F.3d at 333 (quoting *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017)).

In applying those principles to the FDCPA, we have repeatedly recognized a fundamental point: When a debt collector fails to inform a debtor of his statutory rights, then the debtor has suffered a concrete injury "only if it impairs the [debtor's] 'ability to use [that information] for a substantive purpose that the statute envisioned.'" *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 280 (7th Cir. 2020) (quoting *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 694 (7th Cir. 2018)). Here, that means Wadsworth incurred a concrete injury only if Kross's failure to provide notice of her statutory rights caused her to suffer a harm identified by the Act, "such as paying money she did not owe" or would have disputed. *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 710 (7th Cir. 2021); *see also* 15 U.S.C. § 1692(a) (finding that abusive debt-collection practices lead to "personal bankruptcies," "marital instability," "loss of jobs," and "invasions of individual privacy").

But Wadsworth has not established that Kross's communications caused her any harm related to the Act. Indeed, she admitted at her deposition that she has not paid either Kross or PRA in the wake of Kross's mailings and telephone calls. Wadsworth has offered us no basis to believe that her substantive interests under the Act would have been better protected if Kross had complied with the FDCPA.

Instead, in her complaint and testimony, Wadsworth contends only that she suffered emotional harms. The complaint merely alleges that she "has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish

and emotional distress." The evidentiary record adds little more. Wadsworth testified at her deposition that she never paid Kross or PRA any money after Kross contacted her, nor did she rely on Kross's communication to her detriment in any other way. Instead, she stated that she got less sleep and felt intimidated, worried, and embarrassed. Indeed, Wadsworth's own attorney asked her about the "specific types of injuries" caused by Kross's letter, to which Wadsworth merely replied: "Stress, anxiety." And when her attorney asked if there were any other injuries, Wadsworth responded, "Just that's pretty much it."

As our bevy of recent decisions on FDCPA standing makes clear, anxiety and embarrassment are not injuries in fact. Indeed, we have expressly rejected "stress" as constituting concrete injury following an FDCPA violation. *Pennell v. Global Tr. Mgmt.*, 990 F.3d 1041, 1045 (7th Cir. 2021). Likewise, it is not enough for a plaintiff to be "annoyed" or "intimidated" by a violation. *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020). Nor is it enough for a plaintiff to experience "infuriation or disgust" or "a sense of indignation." *Id.* Likewise, a plaintiff's "state of confusion" resulting from an FDCPA-deficient communication, without any ensuing detriment, is not a concrete injury for if it were, "then everyone would have standing to litigate about everything." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068–69 (7th Cir. 2020). These are quintessential abstract harms that are beyond our power to remedy. The same is true of the stress and embarrassment that Wadsworth complains of in this case.

Being informed of an outstanding debt can sometimes be a stressful experience, but federal courts may entertain

FDCPA claims only when the plaintiff suffers a concrete harm that he wouldn't have incurred had the debt collector complied with the Act. *Casillas*, 926 F.3d at 334. Because Wadsworth has not established standing, we REVERSE the judgment and REMAND with instructions to dismiss this case for lack of jurisdiction.