In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-1524

SONJA PENNELL,

*Plaintiff-Appellant,*

*v.*

GLOBAL TRUST MANAGEMENT, LLC,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:18-cv-01698-JRS-DLP — **James R. Sweeney, II**, *Judge.*

_____

ARGUED DECEMBER 9, 2020 — DECIDED MARCH 11, 2021

_____

Before WOOD, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* Sonja Pennell defaulted on a loan from MobiLoans, LLC, a lender. Pennell sent MobiLoans a letter refusing to pay her debt and requesting that all future debt communications cease. Soon after, MobiLoans sold Pennell's debt to Global Trust Management, LLC, a debt collector. In purchasing the debt, Global Trust obtained no actual knowledge that Pennell refused to pay her debt and that she was represented by counsel.

In November 2017, Pennell received a dunning letter from Global Trust. Odd, she thought, because her counsel had already asked the lender to stop directly communicating with her about the debt. Through a letter from her counsel, Pennell notified Global Trust that she refused to pay the debt and requested all debt communications stop. Global Trust complied with her request and did not take any further actions.

Pennell sued. She alleged that Global Trust violated 15 U.S.C. § 1692c(a)(2) and (c) of the Fair Debt Collection Practices Act (the "FDCPA"), which regulates debt collectors' communications with consumers. Section 1692c(a)(2) prohibits a debt collector from directly communicating with a consumer who is represented by an attorney with respect to the debt. And § 1692c(c) proscribes a debt collector from directly communicating with a consumer who notifies a debt collector in writing that she refuses to pay the debt or that she wishes the debt collector to stop communicating with her. In her complaint, Pennell claimed "stress and confusion" as her injuries. She asserted Global Trust's dunning letter made her think that "her demand had been futile" and that she did not have rights under the FDCPA "to refuse to pay [her] debt and to demand that collection communications cease." The dunning letter, Pennell added, led her "to question whether she was still represented by counsel as to this debt, which caused stress and confusion as to whether she was required to pay the debt at issue."

The district court granted summary judgment for Global Trust on the merits. It reasoned that Global Trust could not have violated § 1692c(a)(2) and (c) without having actual knowledge of Pennell's cease-communication request.

Pennell then filed a motion to reconsider, which the district court denied.

Pennell appealed. Neither party has raised the issue of Article III standing in their briefs. After hearing oral argument, we directed the parties to file supplemental memoranda addressing subject-matter jurisdiction in light of our court's recent FDCPA standing decisions. *See, e.g., Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708 (7th Cir. 2021); *Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020); *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020); *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020). Of these recent FDCPA cases, this is the first to implicate § 1692c.

To resolve this appeal, we must answer the jurisdictional question whether Pennell has Article III standing to sue.

Article III of the Constitution limits the "judicial Power of the United States" to "Cases" and "Controversies." From this text comes the standing doctrine, which "confines the federal courts to a properly judicial role" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The "irreducible constitutional minimum of standing" requires the plaintiff or party invoking federal jurisdiction to demonstrate that he has suffered an injury in fact that is fairly traceable to the defendant's conduct and redressable by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff "must establish standing at the time suit is filed and cannot manufacture

standing afterwards." *Pollack v. U.S. Dep't of Just.*, 577 F.3d 736, 742 n.2 (7th Cir. 2009). The Article III standing inquiry "remains open to review at all stages of the litigation." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994).

This case turns on the "foremost" standing requirement—injury in fact. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998). To establish injury in fact, a plaintiff must allege a "concrete and particularized" injury. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way," *Lujan*, 504 U.S. at 560 n.1, and it is concrete if it is "real, and not abstract." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks omitted). But a concrete injury need not be tangible; a risk of real harm can constitute concrete harm. *See id.* at 1549. For a statutory violation, a plaintiff does not automatically satisfy concreteness "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* That is because "a bare procedural violation, divorced from any concrete harm" cannot satisfy the injury-in-fact requirement. *Id.*

In *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019), this court applied *Spokeo*'s holding in the FDCPA context. There, the plaintiff contended that the defendant violated 15 U.S.C. § 1692g(a) by failing to provide consumers with adequate notice about preserving their statutory rights to dispute their debt. *Id.* at 333–34. The plaintiff, however, did not assert any actual harm or risk of harm. She "complained only that her notice was missing some information" that the statute requires, without claiming that the defendant's mistake put her "in harm's way." *Id.* at 334. We dismissed the action for lack of subject-matter jurisdiction, noting that to

satisfy the injury-in-fact requirement, an FDCPA plaintiff must allege in the complaint that "the violation harmed or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect." *Id.* at 333 (internal quotation marks omitted). We concluded, "no harm, no foul." *Id.* at 331.

Pennell alleged in her complaint that Global Trust's dunning letter caused stress and confusion. But we made clear in *Brunett* that "the state of confusion is not itself an injury." 982 F.3d at 1068. Nor does stress by itself with no physical manifestations and no qualified medical diagnosis amount to a concrete harm. *Cf. United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 616 (7th Cir. 2015) (noting that "purely psychological harm" does not suffice to establish Article III standing). For the alleged injury to be concrete, a plaintiff must have acted "to her detriment, on that confusion." *Brunett*, 982 F.3d at 1068. Pennell failed to show that receiving Global Trust's dunning letter led her to change her course of action or put her in harm's way. Instead, she merely pointed to a statutory violation, which is not enough to establish standing under Article III. *See Bazile*, 983 F.3d at 279 (explaining that "a plaintiff must do more than allege an FDCPA violation to establish standing; she must also show personal harm"). So we conclude Pennell failed to allege concrete injury in her complaint.

To save her claim, Pennell contends that the dunning letter invaded her privacy, which she submits as her injury for the first time in her supplemental memorandum. Pennell relies on *Gadelhak v. AT&T Servs., Inc.*—a case involving unwanted text messages and the Telephone Consumer Protection Act—

to argue that Global Trust invaded her privacy by sending her an unwanted collection letter. 950 F.3d 458 (7th Cir. 2020).

But we need not entertain Pennell's invasion of privacy argument. When courts analyze standing, "allegations matter." *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1246, 1248 (7th Cir. 2021) ("Our job is to decide whether [plaintiffs] have Article III standing to pursue the case they have presented in their complaint."). What matters here, then, is what Pennell alleged in her operative complaint. *See id.* at 1242; *see also Borelli v. City of Reading*, 532 F.2d 950, 951 (3d Cir. 1976) (per curiam) (noting that "[t]he question of standing is generally determined from the face of the complaint"). Pennell did not complain that her injuries included any perceived invasion of privacy. On appeal she cannot broaden her complaint by inserting a new injury. That is because "an important corollary" to the injury-in-fact determination "is the requirement that the plaintiff must clearly allege facts demonstrating each element." *Thornley*, 984 F.3d at 1245–46 (internal quotation marks omitted); *see also Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (per curiam) (looking at plaintiffs' complaint to determine whether they sufficiently alleged an actual injury). The only injuries Pennell included in her complaint were stress and confusion, and those do not suffice for standing.

We therefore VACATE the district court's judgment and REMAND with instructions to dismiss for lack of subject-matter jurisdiction.