In the

# United States Court of Appeals

### For the Seventh Circuit

―――――――――――

No. 20-2351

ROSE MARKAKOS,

*Plaintiff-Appellant,*

*v.*

MEDICREDIT, INC.,

*Defendant-Appellee.*

―――――――――――

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 19-C-7723 — **Ronald A. Guzmán**, *Judge.*

―――――――――――

ARGUED JANUARY 14, 2021 — DECIDED MAY 14, 2021

―――――――――――

Before RIPPLE, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* In the last five months, we've held
eight times that a breach of the Fair Debt Collection Practices
Act ("FDCPA") does not, by itself, cause an injury in fact. We
now repeat that refrain once more.

In 2019, Defendant Medicredit, Inc., sent Plaintiff Rose
Markakos a letter seeking to collect $1,830.56 on behalf of a
creditor identified as "Northwest Community 2NDS" for

medical services performed in 2017. A few weeks later, Markakos's lawyer sent Medicredit a letter disputing the debt (because the medical services were allegedly inadequate). Medicredit then sent a response to Markakos's counsel that listed a different amount owed of only $407.00.

Markakos sued Medicredit for allegedly violating the FDCPA by sending letters to her that stated inconsistent debt amounts and that unclearly identified her creditor as "Northwest Community 2NDS"—which is not the name of any legal entity in Illinois. Medicredit moved to dismiss the complaint for lack of standing and for failure to state a claim. The district court granted the motion and dismissed the case without prejudice.

That decision was right. Markakos lacks standing to sue Medicredit under the FDCPA because she did not allege that the deficient information harmed her in any way. Instead, she admits that she properly disputed her debt and never overpaid. We thus affirm the decision of the district court.

## I. ANALYSIS

Article III limits federal courts to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2. To ensure that what is before them is in fact a case or controversy, federal courts require that plaintiffs have "standing" to sue. That means a plaintiff must have suffered an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

This case turns on the injury-in-fact requirement. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent,

not "conjectural" or "hypothetical."'" *Id.* at 560 (citations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)) (citing *Allen v. Wright*, 468 U.S. 737, 756 (1984); *Warth v. Seldin*, 422 U.S. 490, 508 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972)).

Markakos argues that her injury in fact is informational in nature—the FDCPA entitled her to certain information about her debt amount and the name of her creditor, and she didn't get it. 15 U.S.C. § 1692g(a)(1)–(2) ("[A] debt collector shall … send the consumer a written notice containing—(1) the amount of the debt; (2) the name of the creditor to whom the debt is owed … .").

We have recently decided a slew of cases that foreclose this argument. *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020); *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020); *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020); *Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020); *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 711 (7th Cir. 2021); *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041 (7th Cir. 2021).

The thrust of these cases is simple—the violation of an FDCPA provision, whether "procedural" or "substantive," does not necessarily cause an injury in fact. *Larkin*, 982 F.3d at 1066. Rather, to fulfil the injury in fact requirement, the violation must have "harmed or presented an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect." *Casillas*, 926 F.3d at 333 (quoting *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017)); *see*

*also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016), as revised (May 24, 2016) ("[N]ot all inaccuracies [in a credit report governed by the Fair Credit Reporting Act] cause harm or present any material risk of harm.").

For example, an FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt. *Larkin*, 982 F.3d at 1066. In *Lavallee v. Med-1 Solutions*, for instance, the debt collector failed to tell the plaintiff how to dispute her debt (as the FDCPA requires), and as a result, the plaintiff did not dispute the debt as she might have if she had received the information. 932 F.3d 1049, 1053 (7th Cir. 2019). She thus suffered a concrete injury. *Id.*

Unlike the plaintiff in *Lavelle*, Markakos has not alleged any way in which the alleged misinformation in Medicredit's letters injured her. In fact, she's shown the opposite by admitting that she did not pay anything extra and that she properly "disputed the debt as not warranted by the services provided."

Markakos's only other alleged injury is that she was confused and aggravated by Medicredit's letter. But we've held that such grievances are not injuries in fact in this context. *Gunn*, 982 F.3d at 1071 ("Many people are annoyed to learn that governmental action may put endangered species at risk … . Yet … to litigate over such acts in federal court, the plaintiff must show a concrete and particularized loss, not infuriation or disgust."); *Brunett*, 982 F.3d at 1068 ("[T]he state of confusion is not itself an injury." (citing *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020))). This case is also not like *Gadelhak v. AT&T Services, Inc.*, in which we held that spam text messages, phone calls, and faxes can cause

cognizable injury, 950 F.3d 458 (7th Cir. 2020). According to our decision in *Gunn*, collection letters that are allegedly unlawful merely because they contain misinformation are not such actionable invasions of privacy. 982 F.3d at 1071

\* \* \*

The resolution of the issue of standing in this matter is quite straightforward given the precedent of this court reiterated in a number of recent cases. However, individual members of this court, now including my concurring colleagues, have expressed that they do not agree with the law of this circuit. *Casillas*, 926 F.3d at 339 (Wood, C.J., dissenting from the denial of en banc consideration); *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1250 (7th Cir. 2021) (Hamilton, J., concurring). It seems appropriate to briefly address the fundamental question of why our circuit law is correct according to controlling Supreme Court precedent.

The debate over what qualifies as an "injury in fact" in the realm of consumer protection laws like the FDCPA stems from competing interpretations of the Supreme Court's decision in *Spokeo*, 136 S. Ct. at 1540. There, the Court considered whether a plaintiff had standing to sue a company that violated the Fair Credit Reporting Act ("FCRA") by generating a consumer report with inaccurate information about the plaintiff's credit history. *Id.* at 1546. The Court somewhat contradictorily decreed on the one hand that "Article III standing requires a concrete injury even in the context of a statutory violation" but on the other hand that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id.* at 1549.

Judge Hamilton has aptly labeled *Spokeo*'s instruction "Delphic" and has noted the oceans of ink spilled interpreting it. *Thornley*, 984 F.3d at 1250 (Hamilton, J., concurring). Still, the court in *Spokeo* made very clear, even amidst its difficult-to-understand instruction, that because "not all inaccuracies [in a credit report] cause harm or present any material risk of harm," the plaintiff could not satisfy the demands of Article III merely by alleging a violation of the FCRA. 136 S. Ct. at 1550. For example, the Court explained that "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.*

Our circuit precedent thus faithfully holds that a statutory violation alone does not cause an injury in fact; instead, the violation must have "harmed or presented an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect." *Casillas*, 926 F.3d at 333 (quoting *Groshek*, 865 F.3d at 887). And as explained, this understanding of *Spokeo* defeats Markakos's purported standing.

Further, there is yet more recent Supreme Court precedent that clarifies any lingering issues. In *Thole v. U.S. Bank N.A.*, the plaintiffs received all of their monthly pension benefits from a defined-benefit retirement plan but nevertheless sued the plan's managers for violating the Employee Retirement Income Security Act of 1974 ("ERISA") by poorly investing the plan's assets. 140 S. Ct. 1615, 1618 (2020). The Court expressed concern that "[c]ourts sometimes make standing law more complicated than it needs to be." *Id.* at 1622. It then explained that "[t]here is no ERISA exception to Article III. And under ordinary Article III standing analysis, the plaintiffs lack[ed] Article III standing for a simple, commonsense reason: They ha[d] received all of their vested pension benefits

so far, and they [we]re legally entitled to receive the same monthly payments for the rest of their lives." *Id.* In other words, "[w]inning or losing th[e] suit would not [have] change[d] the plaintiffs' monthly pension benefits." *Id.*

Here too, Markakos's lack of standing is obvious. As with ERISA, there is no FDCPA exception to Article III. And Markakos has failed to show an injury in fact for a commonsense reason: she has not paid a dime, and she has properly disputed her debt. Thus, "[w]inning or losing this suit would not change" Markakos's prospects. *Thole*, 140 S. Ct. at 1622. If this case went forward and Markakos lost, she would continue disputing her debt based on the inadequacy of the services provided. And if she won, she would do just the same; not a penny would change hands, and not a word or deed would be rescinded.

## II. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court dismissing Markakos's claim without prejudice.[1]

---

[1] Markakos notes that the district court addressed the merits of some of her claims, which was improper if she in fact lacked standing. Maybe so. *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1316 (7th Cir. 1995) ("[S]trictly speaking, jurisdictional issues should be resolved ahead of issues on the merits."). But this is irrelevant because the case was still properly dismissed without prejudice, as required when a plaintiff lacks standing. *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 969 (7th Cir. 2016) (citing Fed. R. Civ. P. 12(b)(1)).

RIPPLE, *Circuit Judge*, concurring. I join the judgment of the court. I agree that, under our recent cases, Ms. Markakos lacks standing to bring this action. The doctrines of stare decisis and precedent require that we follow the holdings of those cases.

I have not encountered the standing issue presented in this case on an earlier occasion. I therefore write separately to express my concern that these recent cases overread *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and, in doing so, take too restrictive a view of Congress's authority to identify intangible injuries and to allocate enforcement burdens. *See Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1251 (7th Cir. 2021) (Hamilton, J., concurring).

The outcome in today's case puts a fine point on the problem identified by Judge Hamilton in *Thornley*. Congress has prohibited explicitly debt collectors from sending collection notices that state an inaccurate amount owed and has given individuals who receive such letters the right to sue the sender. Relying on that provision in her complaint, Ms. Markakos alleged that Medicredit had sent her such a letter and, in that letter, had instructed her to pay the stated amount. There can be no question that her complaint therefore states a core substantive violation of the FDCPA. Yet, our new case law closes the door on Ms. Markakos's claim. In doing so, the court clearly effects a direct and complete frustration of Congress's attempt to regulate commerce in the manner that it has chosen.

Employing constitutional standing doctrine to effectively nullify affirmative congressional action designed to curb an abuse of interstate commerce is a step not to be undertaken lightly. If it is undertaken, courts have a responsibility to ensure that they stand on solid doctrinal ground. In my view,

the Supreme Court's decision in *Spokeo* certainly does not provide a firm foundation for the construction of the ambitious enterprise that the court seems to be building at such a rapid pace.

In *Spokeo*, 136 S. Ct. at 1549, the Court focused on historical practice and Congress's judgment when deciding "whether an intangible harm constitutes injury in fact." On the issue of historical practice, the Court told us to "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* As for the legislative role, the Court made clear that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements, [thus] its judgment is also instructive and important." *Id.* The Court also stated that a "bare procedural violation" does not amount to an injury in fact.[1] *Id.* at 1550.

Despite measured applications of *Spokeo* in other circuits,[2] our case law recently began to develop a new enthusiasm not

---

[1] It is noteworthy that the Court's example of a "bare procedural violation" was the inclusion of an incorrect zip code on an individual's credit report. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016) (discussing intangible injury under the Fair Credit Reporting Act).

[2] *See, e.g.*, *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 756 (6th Cir. 2018) (observing that *Spokeo* identified two categories of statutory violations: those that implicate core protected interests, which require no additional showing of harm, and those that are truly bare procedural violations that necessitate an additional allegation of harm); *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017) ("*Spokeo II*") (distinguishing, on remand from the Supreme Court, between violations of purely procedural rights and violations of procedures tied to the concrete interests Congress sought to protect); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 640 & n.21 (3d Cir. 2017) (holding that disclosure of truthful, private

for the holding of *Spokeo*, but for the *potential* of its holding to transform, significantly, Congress's substantive regulation of the economy. Over the past two years or so, we first set out to broaden, substantially, the concept of a "bare procedural violation." We then extended, without any further guidance from the Supreme Court, *Spokeo*'s holding to substantive, core violations of congressional legislation. In short, we expanded and then ignored completely the guideposts established by the Court and, at the same time, underemphasized and then ignored the Court's discussion of historical practice and congressional judgment in regulating the interstate commerce of the United States.

An early step in our treatment of FDCPA standing decisions came in *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329 (7th Cir. 2019). There, the plaintiff had received a collection notice that informed her of the right to dispute the debt but omitted that she must make the dispute in writing. *Id.* at 334. We concluded that the omission was a bare procedural injury, and because the plaintiff never planned to dispute the debt, we viewed the situation as "no harm, no foul." *Id.* at 331, 334. *Casillas* touched briefly on Congress's purpose for enacting the FDCPA and not at all on comparable common law harms. *See id.* at 334.

Since *Casillas*, we have expanded the "no harm, no foul" approach to the FDCPA's substantive provisions. *See Larkin v.*

---

information was not a "mere technical or procedural violation" of the Fair Credit Reporting Act even though there was no "consequent harm"); *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016) ("[T]o determine whether a procedural violation manifests injury in fact, a court properly considers whether Congress conferred the procedural right in order to protect an individual's concrete interests.").

*Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020). After *Larkin*, it is not enough to allege that a dunning letter contained false, misleading, or deceptive information, even though preventing such abuse is the core objective of the FDCPA. *See id.* In a subsequent case highly similar to this one, we held that it was not enough for a plaintiff to allege that a debt collector sent a dunning letter that overstated the amount owed by $104 (a not insignificant sum for many people). *Nettles v. Midland Funding LLC*, 983 F.3d 896, 898 (7th Cir. 2020). There, the recipient of the letter did not pay the overstated amount, although obtaining her payment of that overstated amount was surely the goal of the dunning letter.

The result of our flurry of recent decisions is that, at least in this circuit, a debt collector may send a letter demanding payment on an overstated debt, and the recipient lacks standing to enforce the FDCPA unless the debt collector's deceit is successful in one way or another. *See id.* at 900. In other words, we now view the receipt of an inflated payment demand as simply "receipt of a noncompliant collection letter." *Id.* This is a long way from an incorrect zip code on a credit report. We are now traveling far out in front of our *Spokeo*-provided headlights and directly frustrating the congressional determination as to when and how commerce must be regulated.

Today's decision continues the invasion into the congressional domain while continuing to provide no real precedential justification for doing so. We must confront the stark reality that Congress made plain its purpose in enacting the FDCPA: "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not

competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Congress found that rampant "abusive, deceptive, and unfair" collection practices were contributing to "personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.* § 1692(a). Congress also intended that individual plaintiffs would be the FDCPA's primary enforcers.[3] *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 603 (2010) (noting the "FDCPA's calibrated scheme of statutory incentives to encourage self-enforcement").

Moreover, Congress had every right to decrease the confusion and concomitant disincentive to use the credit markets caused by the profusion of sharp practices facilitated by modern technology. The FDCPA requires that collection letters include the accurate amount owed for a very good reason. In our information-technology-driven economy, individuals who receive inaccurate dunning letters, mostly computer-generated, become reputationally, and therefore economically, hobbled in their future endeavors.

The harm Congress targeted through the FDCPA certainly bears a close relationship to harms historically recognized under the common law. *See Spokeo*, 136 S. Ct. at 1549. Fraudulent

---

[3] It is no secret that the path that we are on now may well result in shifting the burden of enforcing the FDCPA exclusively to federal consumer protection agencies. *Accord Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1251 (7th Cir. 2021) (Hamilton, J., concurring). We also know that those agencies will struggle to keep up with the volume of viable cases. *See* CFPB, *Fair Debt Collection Practices Act Annual Report* 13–17 (2020) ("From January 1, 2019, through December 31, 2019, the Bureau received approximately 75,200 debt collection complaints.").

or negligent misrepresentation present close historical ana-
logues, as one member of the Eleventh Circuit recently ob-
served. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990,
1009–10 (11th Cir. 2020) (Martin, J., concurring in part and dis-
senting in part). It is true that each of these common law torts
typically required some degree of reliance by the plaintiff. *See*
Restatement (Second) of Torts §§ 525, 552 (1977). But *Spokeo*
reminds us that "the risk of real harm" can satisfy the con-
creteness requirement. *Spokeo*, 136 S. Ct. at 1549 (citing *Clapper
v. Amnesty Int'l USA*, 568 U.S. 398 (2013)). Undoubtedly, a
debt collector who sends a dunning letter that includes an
overstated amount owed, along with instructions on how to
pay, hopes that the recipient will in fact pay. Congress does
not deviate too far from the common law when it enables the
wise debtor to sue for a debt collector's attempt at deceit (and
thereby deter future abusive conduct by that debt collector).
Thus, the harm Congress sought to address through the
FDCPA is similar in kind to traditionally recognized harms,
even if it is not an exact one-to-one replica of the common law.
*See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir.
2020) (It is enough that "Congress identified a modern rela-
tive of a harm with long common law roots.").

Ms. Markakos's allegations therefore implicate the core in-
terests that Congress sought to address when it enacted the
FDCPA. To say that there is no injury in this economy when
a person receives a dunning letter demanding money that is
not owed not only ignores the realities of everyday life, it also
ignores the findings of Congress and constitutes a direct af-
front to a congressional prerogative at the core of the legisla-
tive function. The court's failure to recognize the injury that
Congress saw and addressed simply testifies to our failure to
appreciate how the people we judicially govern live, or more

precisely, it testifies to our failure to defer to the congressional appreciation as to how our fellow citizens live. The Supreme Court's holding in *Spokeo* provides no justification for our embarking on such a precarious course. I fear we have given Congress's judgment too little attention and erected an unnecessary constitutional barrier to enforcement of the FDCPA.

Rovner, *Circuit Judge*, concurring. I agree that under our current caselaw, the plaintiff has failed to allege standing in this case and therefore that the decision of the district court should be affirmed. My dispute is with the opinion's foray into the wisdom of our current caselaw as to FDCPA standing. Respect for *stare decisis* necessitates deference to the path this circuit has chosen, but it should not be read—in this or other cases—as signaling agreement by all panel members with our circuit's approach. I agree with Judge Ripple in his concurrence that the approaches taken in some other circuits are consistent with Article III case-or-controversy jurisprudence, while being more properly deferential to the Congressional judgment inherent in the determination of harms and remedies in the FDCPA, and that those approaches constitute the optimal path. The judgment of Congress should not be thwarted by an interpretation of Article III standing that is narrower than required to meet the constitutional imperative.

Our recent caselaw reflects an approach that requires a plaintiff to explicitly allege a risk of harm, rather than merely to allege a statutory violation alone as inherently evidencing that risk. In *Casillas*, we held that in order to demonstrate standing, an FDCPA plaintiff asserting a procedural violation must include an allegation of concrete harm in her complaint, and that a bare allegation of a statutory violation was insufficient. *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329, 333 (7th Cir. 2019); see also *Lavallee v. Med-1 Sols., LLC*, 932 F.3d 1049, 1052–53 (7th Cir. 2019). *Larkin v. Finance System of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020), subsequently made explicit that the *Spokeo* and *Casillas* reasoning applied to substantive claims as well as procedural ones, and that a plaintiff must allege a risk of harm in order to demonstrate standing. Although characterized at times as an expansion of

our circuit's law, rather than breaking new ground, that holding in *Larkin* mirrored the holdings of cases that preceded it in both the Supreme Court and our circuit. As *Larkin* recognized, the Supreme Court in *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1619 (2020), had already extended the *Spokeo* reasoning to a substantive claim, and *Larkin* relied on that holding in rejecting the plaintiff's sole argument, which was that the substantive-procedural distinction was dispositive. 982 F.3d at 1066. Moreover, prior to *Larkin*, we had already applied *Spokeo* to substantive claims, and in fact to the same claims as in *Larkin*—substantive claims under § 1692e of the FDCPA—in *Evans v. Portfolio Recovery Associates, LLC*, 889 F.3d 337 (7th Cir. 2018). In distinguishing its situation from that in another case, *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017), the *Evans* court made clear that it is not enough that the statutory violation presented a risk of harm—the plaintiff has to explicitly allege a risk of concrete harm. The *Evans* court noted that in *Gubala* there was unquestionably a risk of harm in the statutory violation, but noted that although it was plausible that the plaintiff feared that potential harm, he failed to allege that he did so. 889 F.3d at 345–46. Accordingly, that potentiality could not support standing. The court contrasted that with the plaintiffs in its case, who demonstrated standing because they "explicitly alleged a risk of concrete harm—they pointed to the risk of financial harm as result of credit reporting agencies lowering their credit score." *Evans*, 889 F.3d at 346. In *Larkin*, we similarly held that a plaintiff must allege a risk of harm in order to have standing. Noting that an FDCPA plaintiff must allege a concrete injury whether the alleged statutory violation is characterized as procedural or substantive, the *Larkin* court held that there was no standing because the plaintiffs did not allege harm or a risk of harm from the

alleged statutory violations, and had eschewed the opportunities provided by our court at oral argument to identify any such harm or risk of harm. 982 F.3d at 1066. Finally, even prior to *Evans*, our cases had already established the applicability of the *Spokeo* reasoning to substantive claims in our circuit. For instance, in *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 n.2 (7th Cir. 2016), our court rejected the arguments that *Spokeo* was limited to procedural violations and that a violation of a substantive statutory provision alone establishes standing:

> Even at argument, Meyers would not say that Nicolet's violation had caused him any concrete harm. He staked his entire standing argument on the statute's grant of a substantive right to receive a compliant receipt. But whether the right is characterized as "substantive" or "procedural," its violation must be accompanied by an injury-in-fact. A violation of a statute that causes no harm does not trigger a federal case. That is one of the lessons of *Spokeo*.

Accord *Gubala*, 846 F.3d at 912 (recognizing that *Meyer* foreclosed the argument that the *Spokeo* holding—that Article III standing required a concrete injury even in the context of a statutory violation – applies only to violations categorized as procedural rather than substantive); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). Those and other cases make clear that at least in our circuit, for FDCPA statutory violations regardless of whether they are termed procedural or substantive, a plaintiff must allege harm or a risk of harm in order to satisfy the concreteness requirement of the Article III standing analysis.

A number of circuits have similarly held that a statutory violation under § 1692e is insufficient alone to establish injury-in-fact. See *Frank v. Autovest, LLC*, 961 F.3d 1185, 1188–89 (D.C. Cir. 2020); *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1001–02 (11th Cir. 2020); *Hagy v. Demers & Adams*, 882 F.3d 616, 621–23 (6th Cir. 2018). But as Judge Ripple's concurrence points out, other circuits have held that an allegation of a statutory violation can itself establish standing, where the violation implicates the concrete interest of the statute. See, e.*g.*, *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016) ("where Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any *additional* harm beyond the one Congress has identified.'"), citing *Spokeo*, 136 S. Ct. at 1549 (emphasis in original); *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) (hereinafter "*Spokeo II*.")

*Spokeo* itself held that in assessing standing, courts should examine whether the alleged intangible injury bears a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." 136 S. Ct. at 1549. But that too has proved problematic in implementation. Circuits that have discussed that relationship between statutory provisions and common law actions have taken divergent approaches. For instance, the Eleventh Circuit recognized that the prohibition on false, misleading or deceptive representations in § 1692e of the FDCPA could be compared to the common law claim of fraudulent or negligent misrepresentations. *Trichell*, 964 F.3d at 997–98. But the court nevertheless found that equivalence insufficient to constitute the "close relationship" discussed in *Spokeo*. The court

held that those common law claims required plaintiffs to prove harm caused by justifiable reliance on the misrepresentations, and therefore could not be used to signal that the claims constituted an injury even absent evidence of such reliance and harm. *Id.* at 998 ("[b]y jettisoning the bedrock elements of reliance and damages, the plaintiffs assert claims with no relationship to harms traditionally remediable in American or English courts."). On the other hand, the Ninth Circuit (on remand from the Supreme Court) in *Spokeo II*, considering a claim under the Fair Credit Reporting Act (FCRA), rejected the notion that the elements of a common law action and a statutory prohibition must be identical in order to meet the "close relationship" standard, stating:

> We recognize, of course, that there are differences between the harms that FCRA protects against and those at issue in common-law causes of action like defamation or libel per se. As *Spokeo* points out, those common-law claims required the disclosure of false information that would be harmful to one's reputation, while FCRA protects against the disclosure of merely inaccurate information, without requiring a showing of reputational harm. But the Supreme Court observed that "it is instructive to consider whether an alleged intangible harm *has a close relationship* to a harm that has traditionally been regarded as providing a basis for a lawsuit," not that Congress may recognize a de facto intangible harm only when its statute exactly tracks the common law.

867 F.3d at 1115, quoting *Spokeo*, 136 S. Ct. at 1549; see also *Trichell*, 964 F.3d at 1006, 1010 (Martin, J. concurring in part) (arguing that §§ 1692e and 1692f are analogous to the common law torts of abuse of process and fraudulent misrepresentation, and noting that "[i]f a plaintiff were required to satisfy every element of a common law cause of action before qualifying for statutory relief, Congress's power to 'elevat[e] intangible harms' by defining injuries and chains of causation which will 'give rise to a case or controversy where none existed before' would be illusory") quoting *Spokeo*, 136 S. Ct. at 1549.

Judge Ripple's concurrence expresses a similar view, pointing out even the *risk* of harm suffices for purposes of standing, and therefore the analogy to common law fraud should not be dismissed solely based on the common law requirement of harm. That approach appears to me to be the more reasoned approach, particularly given that the analysis considers only the relationship to the harm alleged, and requires only a "close" relationship not identicality.

I share some of the concerns expressed in Judge Ripple's concurrence in this case and the dissenting opinion in *Casillas*, and favor the approach taken in cases such as *Spokeo II*. Where the failure to comply with a substantive provision of the FDCPA is among the concrete harms that Congress enacted the statute to remedy, an allegation of the statutory violation alone should adequately allege a risk of harm absent some reason to believe that the plaintiff was not in fact subject to the risk that the violation entails. See generally *Spokeo*, 136 S. Ct. at 1550 (remanding to determine whether the "particular violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement"). Our

requirement for a rote allegation that the plaintiff is at risk of harm, where the violation itself risks a harm and the plaintiff is the person the statute targets for protection from that harm, adds little more than a trap for the unwary or the obstinate (because, of course, when the failure to make such an allegation is pointed out, the plaintiffs may seek to amend to include the allegation, see *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020)). Analyses as to whether a harm or risk of harm has been alleged veer too often to a discussion as to whether the person alleged *actual* harm rather than whether the more-nebulous concept of a risk of harm has been alleged. In holding that plaintiffs failed to allege that they personally were at risk of harm, courts often bemoan the lack of any allegations that plaintiffs were misled or that the misrepresentation impacted their decision-making, yet those faults indicate only that the plaintiffs were not actually harmed, not that they were not at risk of harm when they received the deceptive materials. The cleaner approach, and one that would fully satisfy the purpose of the standing requirement, would be to recognize that an allegation of the statutory violation alone can adequately allege a risk of harm where the violation by its nature presents a risk of harm to its victims of the type traditionally recognized at common law, and no facts indicate that the plaintiff is not among the individuals so affected. See *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[a]lthough standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal … it often turns on the nature and source of the claim asserted. The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'")(internal citations omitted). It is not a stretch to hold that, absent facts indicating otherwise, a deceptive

communication presents a risk that the recipient will be deceived and will thereby be hampered in his or her ability to properly assess and respond to the debt, and that harm is the type of concrete harm that has been traditionally recognized at common law.

The dissonance among the circuits as to how to approach standing post-*Spokeo*, and even how to apply the analysis as to whether a statutory provision has a "close relationship" with a harm actionable at common law, is a clarion call to the Court for guidance. Hopefully, the Supreme Court will weigh in on this matter in the near future and provide that clarity.