In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 22-2602 & 22-3083

MARK A. PATTERSON,

*Plaintiff-Appellee,*

*v.*

HOWARD HOWE,

*Defendant-Appellant.*

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-03364-DML-SEB — **Debra McVicker Lynch**, *Magistrate Judge.*

ARGUED SEPTEMBER 12, 2023 — DECIDED MARCH 21, 2024

Before EASTERBROOK, HAMILTON, and PRYOR, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Attorney Howard Howe filed suit for a client in an Indiana state court against Mark Patterson to collect an unpaid educational debt. Along with the complaint and summons, Howe served Patterson with four requests for admission, as allowed by Indiana law. Howe did not warn Patterson that the requests would be deemed admitted if Patterson did not respond within thirty days. Patterson

answered the complaint but did not respond to the requests for admission. As we explain below, however, Patterson did not alter his behavior in response to the requests for admission, and during the state-court proceedings, Howe never tried to take advantage of Patterson's failure to respond.

Instead, while that action was pending, Patterson filed this separate federal lawsuit alleging that Howe's practice of serving requests for admission, at least without warning him of the consequences of failing to respond, violated the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. The district court granted summary judgment to plaintiff Patterson. The parties later stipulated to an award of statutory damages of $1,000 to Patterson, and the court awarded him more than $58,000 in attorney fees and costs. Defendant Howe has appealed both the merits judgment and the award of fees and costs. We vacate both judgments and order dismissal of the case. Under circuit law, Patterson lacks standing to bring his claim because he was not concretely harmed by Howe's alleged statutory violation.

I.   *Factual and Procedural Background*

The parties do not dispute the facts of this case except in a few instances noted below. In 2012, plaintiff Mark Patterson began studying at the Indiana Institute of Technology, also known as Indiana Tech. Patterson thought financial aid would cover the cost of his classes. But he submitted his financial aid paperwork for the first semester too late and lost his financial aid for that semester. Patterson contends that the school's financial aid office was responsible for his tardiness because it gave him the wrong deadline. Howe, who had filed the collection suit on behalf of Indiana Tech, disagreed with that assessment. Regardless of fault, though, the parties agree that

Patterson accumulated about $7,500 in student loan debt from his first semester. Indiana Tech then put a hold on his transcript, causing him to interrupt his education.

For several years, Patterson tried to resolve his debt. He emailed the school's financial aid office and tried to settle the matter, but the parties could not reach a resolution. Eventually, in May 2016, Indiana Tech retained attorney Howe to sue Patterson on the debt. When Howe filed suit, he served four documents: a summons, a complaint, a copy of the Payment Options Form that Patterson had signed when he began taking classes, and a one-page document that listed four requests for admission. Two requests were particularly significant. They asked Patterson to admit that the complaint's allegations were true and that Patterson had no valid counterclaim.

Patterson answered the complaint but did not respond to the requests for admission. Under Indiana Trial Rule 36, which parallels Federal Rule of Civil Procedure 36, requests for admission are deemed admitted if the recipient does not respond within thirty days. Patterson claims that when the thirty-day window expired, he did not know the requests for admission would be deemed admitted. He learned of this consequence later.

Though he had no attorney in the state-court action against him, Patterson hired an attorney to file this putative class-action lawsuit against attorney Howe for serving the requests for admission without warning that they would be admitted absent a response within thirty days. Patterson alleged that this practice violated 15 U.S.C. § 1692e and § 1692f of the Fair Debt Collection Practices Act, which prohibit false, deceptive, misleading, unfair, and unconscionable means in

collecting consumer debts owed to someone other than the collector.

The state and federal cases proceeded separately for a few months. Patterson and Indiana Tech then settled the state case. Patterson agreed to pay $150 per month until he paid off his outstanding student debt of $7,500. He also agreed to pay $181 in court costs. In exchange, Indiana Tech agreed to release Patterson's transcript, allowing him to continue his education elsewhere. For reasons not included in our record, the settlement did not address Patterson's related claim in this federal case against attorney Howe.

Patterson continued to press this FDCPA action in federal court. In 2017, the parties filed cross-motions for summary judgment. Patterson argued that the requests for admission violated the Act as a matter of law because they were a deceptive and misleading debt collection practice. Howe argued, among other points, that Patterson lacked standing to pursue his claim. The district court held in favor of Patterson, finding that he had suffered an injury in fact when he was misled by the requests for admission. *Patterson v. Howe*, 307 F. Supp. 3d 927, 939 (S.D. Ind. 2018). The district court also held that Howe violated the Act because the requests for admission "would confuse an unsophisticated debtor … about the required timing and manner of a response to the plaintiff's claims." *Id.* at 936. The district court later certified a class of "All persons in the State of Indiana who received … from Defendant requests for admission served along with the complaint or notice of claim that were not accompanied by the notification that the requests are deemed admitted unless the defendant serves a written answer or objection to the requests upon the plaintiff within thirty days."

In August 2020, Howe asked the district court to reconsider its decision regarding Patterson's standing. Howe argued that our decision in *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329 (7th Cir. 2019), reshaped this circuit's standing doctrine and undercut the district court's decision that Patterson had standing here. The district court granted Howe's motion for reconsideration insofar as it allowed him to conduct additional discovery pertaining to Patterson's standing. *Patterson v. Howe*, No. 1:16-cv-3364, 2021 WL 1124610, at *1, *6 (S.D. Ind. Mar. 23, 2021).

The district court ultimately still found that Patterson had standing to pursue his individual claim under the Act. *Patterson v. Howe*, No. 1:16-cv-3364, 2022 WL 20814938, at *6 (S.D. Ind. July 25, 2022). The district court found that Patterson would have denied the requests for admission within thirty days if he had known they would be deemed admitted otherwise, and that his subjective perception that he had lost negotiating leverage was a concrete injury sufficient to support his standing. Applying the Supreme Court's intervening decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), however, the district court decertified the class. The parties then stipulated to a statutory damages award of $1,000. The district court later awarded Patterson $58,475.32 in attorney fees and costs under 15 U.S.C. § 1692k(a)(3).

II. *Analysis*

Howe argues that the district court erred in its standing determination, merits analysis, and award of costs and fees. In our review here, we view the evidence in the light reasonably most favorable to Patterson, but we review de novo legal issues concerning Patterson's standing. *Spuhler v. State Collection Service, Inc.*, 983 F.3d 282, 285 (7th Cir. 2020). The

undisputed facts show here that Patterson did not have standing to bring his FDCPA claim. We therefore do not reach the remaining issues raised by Howe.

To establish standing, a plaintiff must show that he has suffered or is at imminent risk of suffering an injury caused by the defendant and that the injury could likely be redressed by favorable judicial relief. *TransUnion*, 594 U.S. at 423. Not all injuries satisfy this requirement. Only injuries that are concrete, particularized, and actual or imminent qualify as injuries in fact. *Id.* at 423–24.

A concrete injury is one that is "real, and not abstract." *Id.* at 424. Tangible harms such as monetary loss and physical damage ordinarily suffice. An intangible harm can also be concrete if it bears "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* (internal quotations omitted). For example, reputational and privacy harms are sufficiently concrete because they have established common-law analogues. *Id.* at 425. The relationship between a harm made actionable under a statute and a common-law counterpart need not be exact: the resemblance must exist only "in kind, not degree." *Nabozny v. Optio Solutions LLC*, 84 F.4th 731, 736 (7th Cir. 2023), quoting *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 462 (7th Cir. 2020), citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

Intangible harms arising from statutory violations can satisfy the injury-in-fact requirement so long as they are sufficiently concrete. Congress may create civil liability for conduct that is not actionable under the common law, and consumer-protection statutes like the Fair Credit Reporting Act and the Fair Debt Collection Practices Act are prime examples.

In *TransUnion*, the Supreme Court laid out how lower courts should address standing based on an intangible harm made actionable by a statute. Courts must consider whether the harm bears a close relationship to any harms traditionally recognized as providing a basis for lawsuits in American courts, including those harms specified by the Constitution itself, and must afford "due respect to Congress's decision" to impose obligations on a defendant and to grant a private cause of action. *TransUnion*, 594 U.S. at 425. Courts must not defer automatically to Congress's judgment, *id.* at 426–27, but common-law and constitutional analogues need not provide an exact match, *id.* at 424–25. Congress cannot "transform something that is not remotely harmful into something that is," *id.* at 426, quoting *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018), but it may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," *id.* at 425. This respect for congressional action is "essential to the Constitution's separation of powers." *Id.* at 429. Just as courts may not overstep their role by adjudicating non-justiciable cases, so too they should not overstep their role by refusing to allow remedies for injuries that Congress reasonably deemed compensable.

The Supreme Court gave these general principles more specific content in applying them to the plaintiffs' Fair Credit Reporting Act claims in *TransUnion*, allowing some class members' claims and rejecting others' claims. The plaintiff class alleged that TransUnion had violated the Act by including in credit reports unreliable information indicating that the subjects had potential terrorist ties. *Id.* at 430.

The Supreme Court held first that a subset of class members—those whose reports with potential terrorist ties had been disseminated to potential lenders—had standing. Their asserted harm had a close relationship to harms long recognized under the common law tort of defamation. *Id.* at 433. Those class members had standing based on the distribution of the information without showing more concrete harm, such as an actual refusal to extend credit because of the distributed information.

The Court then held that class members whose TransUnion files included the misleading potential terrorism alerts, but without evidence that the information had been disseminated any further, lacked standing. *Id.* at 433–34. The Court compared the undisseminated information to a defamatory letter that is never sent but kept in a desk drawer. In addition, the Court held that the risk of future harm did not, considered alone, support standing for a claim for damages. *Id.* at 436–37.

Returning from these general principles to this case, plaintiff Patterson offers two related theories to establish standing. First, he contends that he would have denied the requests for admission if he had been warned they would be deemed admitted after thirty days without a response. The fact that he would have taken a different course of action, he argues, suffices to show a concrete injury. Second, Patterson argues that his inadvertent admissions caused him to lose negotiating leverage in the debt-collection suit, ultimately forcing him to settle for the full amount he allegedly owed.

Neither of these theories shows a concrete injury under our circuit's recent case law on standing under the Fair Debt Collection Practices Act. First, even if we assume that Patterson's behavior might have been altered by Howe's alleged

statutory violation, he still did not show that he suffered concrete harm from that change. Second, the harm that he alleges he ultimately suffered—monetary loss due to a lack of leverage in settlement negotiations—occurred after he filed his complaint, which means it cannot provide the basis for standing in this case.

A. *Different Course of Action*

Patterson contends that he would have denied the requests for admission if he had known they would be deemed admitted without a timely response. We assume that is correct as a matter of fact. He argues that this alteration to his behavior—misleading him into not denying the requests for admission instead of denying them—amounted to a concrete injury.

Patterson's argument picks up a thread in our case law recognizing that altered behavior can be a concrete harm. Regarding debt collection practices, we said in *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021), that "an FDCPA violation might cause harm if it … alters a plaintiff's response to a debt." For example, a plaintiff might suffer an injury if a misleading debt collection practice "leads her to pay something she does not owe, or to pay a debt with interest running at a low rate when the money could have been used to pay a debt with interest running at a higher rate." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020).

But not all actions taken or not taken due to confusion, misunderstanding, or ignorance amount to concrete injuries. Hiring an attorney to seek guidance or to file a lawsuit is not a concrete harm, even though it is behavior in reaction to a debt collection practice. *Id.* at 1069; *Nettles v. Midland Funding, LLC*, 983 F.3d 896, 900 (7th Cir. 2020); cf. *Choice v. Kohn Law*

*Firm, S.C.*, 77 F.4th 636, 640–41 (7th Cir. 2023) (Hamilton, J., dissenting) (hiring lawyer to defend state-court debt collection action should support standing where debt collector allegedly violated FDCPA in connection with the suit). That is because hiring an attorney to *file* a new lawsuit is not a personalized injury. Otherwise, anyone could sue for any alleged FDCPA violation, whether or not he suffered any other injury from the allegedly misleading practice.

For an injury in fact, a statutory violation must cause a plaintiff to change his behavior in a way that inflicts concrete harm on the plaintiff. A good example is *Lavallee v. Med-1 Solutions, LLC*, 932 F.3d 1049 (7th Cir. 2019). A debt collector had sued plaintiff Lavallee in state court for unpaid medical bills but did not send her written notice of her rights under 15 U.S.C. § 1692g(a) and (b). The plaintiff responded to this statutory violation by suing the debt collector in federal court. We affirmed summary judgment for the plaintiff, holding that she had standing to pursue her claims because it was "reasonable to infer that she would have exercised her statutory rights" to dispute and insist on verification of her debts if the debt collector had provided the required disclosures. *Id.* at 1053. If she had exercised those rights, the Act would have required a halt in the debt collection action against her.

To be sure, Patterson's situation resembles that in *Lavallee* in some ways. Both plaintiffs were victims of allegedly misleading debt collection practices that caused them to forgo taking actions they otherwise would have taken. The lack of warning caused Patterson not to deny the requests for admission, which resembles the theory that the lack of written

notice caused the plaintiff in *Lavallee* not to dispute or verify her debts.

The decisive difference, however, is that Patterson lacks the most essential component for purposes of Article III standing: concrete harm. Howe never so much as hinted that he might use the admissions against Patterson. Any subjective beliefs or fears that Patterson harbored about the admissions imposed no greater injury than other mental states, like confusion, that we have previously deemed inadequate to confer standing.[1] If Patterson's confusion had caused him to act to his detriment, then he might have had standing. See *Brunett*, 982 F.3d at 1068. But Patterson's confusion, by itself, was not enough. *Pierre v. Midland Credit Management, Inc.*, 29 F.4th 934, 939 (7th Cir. 2022), rehearing en banc denied, 36 F.4th 728 (7th Cir. 2022).

Patterson's argument also fails because he has not identified a "close historical or common-law analogue" that resembles the effects of failing to answer requests for admission. See *TransUnion*, 594 U.S. at 424**.** Identifying such an analogue can help show that intangible injuries can support standing even if they are not easily reduced to monetary figures. See *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146, 1153–54 (7th Cir. 2022) (holding that plaintiffs had standing because failing to report to a credit reporting agency that plaintiff disputed her debts resembled common-law tort of defamation); *Persinger v. Southwest Credit Systems, L.P.*, 20 F.4th 1184, 1191–93 (7th Cir.

---

[1] We have previously implied, but not decided, that psychological states like worry and confusion might confer standing if they manifest in harm that is supported by a medical diagnosis. *Pennell v. Global Trust Management, LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021). There is no such evidence or claim here.

2021) (concluding that plaintiff had standing because unauthorized inquiry into consumer's propensity-to-pay score resembled common-law tort of intrusion upon seclusion). Patterson's briefing did not try to identify any historical or common-law analogue for the harm he allegedly suffered. In response to a question at oral argument, his counsel suggested when asked that his claim was analogous to common-law fraud. Oral argument is too late for such a new theory, which in any event misses the point, which is whether the alleged *injury* has a reasonable common-law (or constitutional) analog. It is not the courts' responsibility to develop an argument for a party.[2]

---

[2] The alleged unfair action here is the use of a common discovery method authorized by both Indiana and federal rules of procedure, neither of which requires a party serving a request for admission on another party to explain the applicable rules. The Ninth Circuit has held that a debt collector can violate the FDCPA by serving requests for admission of facts the debt collector knows are incorrect. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011) (affirming summary judgment for plaintiff). In *McCollough*, the Ninth Circuit explained that debt collection practices are viewed from the standpoint of "the least sophisticated debtor," who cannot be expected to anticipate that a response within thirty days is required. *Id.* Our circuit uses a standard of "an unsophisticated consumer." See *Gammon v. GC Services Ltd. P'ship*, 27 F.3d 1254, 1258–60 & n.† (7th Cir. 1994) (Easterbrook, J., concurring) (noting that "the *least* sophisticated consumers" believed that twelve United States Senators were from other planets) (emphasis added). Such differences in the standard may not matter when it comes to consumer-debtors' understanding of discovery rules for litigation. In any event, a warning about failure to respond to a request for admissions would seem readily comparable to the requirements in Federal Rule of Civil Procedure 4(a)(1)(D) & (E) and Indiana Trial Rule 4(C)(5) that a summons inform the defendant when a response is due and that a failure to appear and defend may result in a default judgment. In another analogous situation—motions for summary

B.  *Diminished Negotiating Leverage*

Patterson also argues that his uninformed failure to deny the requests for admission left him with no negotiating leverage, causing him to settle the state-court action for more money than he believed he owed. We see numerous problems with this theory. For example, it seems to call for pure speculation about how the state-court action might have been resolved absent the actual settlement. The theory also makes us wonder about causation since (a) attorney Howe never took any steps to take advantage of Patterson's failure to respond to the requests for admission, and (b) Patterson's own lawyer filed this FDCPA action apparently without informing Patterson that he could ask the state court to allow him to withdraw the admissions under the escape hatch in Indiana Trial Rule 36(B), which parallels that in Federal Rule of Civil Procedure 36(b).

Without answering these questions, however, we find this theory for standing faces a more basic problem. Standing must exist at the time a lawsuit is filed. *Milwaukee Police Ass'n v. Board of Fire & Police Comm'rs*, 708 F.3d 921, 928 (7th Cir. 2013). Patterson filed his initial complaint in this case on December 14, 2016. He did not settle his state-court case until four months later. When Patterson filed his federal complaint, the mere possibility that his deemed admissions might be

judgment filed against pro se prisoner-plaintiffs—this court has long required a moving defendant to notify the plaintiff of the consequences of failing to respond to the motion with affidavits of his own. *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). But failure to give the required *Lewis* notice means only that summary judgment may not be granted. We have never suggested that such a failure is tortious or could support a separate lawsuit akin to this one.

used against him was neither concrete nor imminent. Such speculative injuries do not support standing for damages claims. *TransUnion*, 594 U.S. at 436–37. Any number of intervening events could have prevented Patterson from feeling obliged to settle for the full amount, including the possibility that his attorney in this case—who presumably understood Indiana Trial Rule 36, since the rule is at the heart of this case—could have advised Patterson to move under Rule 36(B) to withdraw the admissions.

To the extent that Patterson argues that he was injured by merely believing that he had lost negotiating leverage, as opposed to any monetary loss that resulted from that belief, he still fails to establish standing. This sort of worry resembles the psychological states we have previously deemed inadequate. See, e.g., *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (listing psychological states that do not support standing).

Because Patterson lacks standing, the judgment of the district court, ECF 155, is VACATED and the case is REMANDED to the district court to dismiss the case for lack of subject matter jurisdiction. The district court's award of fees and costs, ECF 168, is also VACATED.